# Mode's Appeal.

A sheriff's sale of land before the Act of 6th April 1830, extinguished all prior mortgages, and it was not in the power of the sheriff or purchaser or parties to keep them alive as mortgages so as to affect third persons subsequently buying, by any memorandum in the conditions of the sheriff's sale or bargain amongst themselves of which such subsequent purchaser had notice.

THIS was an appeal by Alexander Mode and Jane Johnson, Jun., from the decree of the Court of Common Pleas of *Chester* county, distributing money in court arising from the sale of real estate by the sheriff under writs of execution.

Samuel Eckstein was on the 9th May 1825, the owner of a paper-mill, messuage and four adjoining tracts of land in Chester county, containing about 130 acres, which on that day he mortgaged to Alexander Mode and William Mode to secure the payment of $5000 in instalments, of which $1000 had been since paid off, which mortgage was recorded on the 11th May 1825. In August 1825, Eckstein conveyed the premises to John Carson. On the 12th November 1825, Carson mortgaged them to Eckstein to secure the payment of $1000. This mortgage was subsequently assigned to and was now held by Jane Johnson, Jun.

Judgment was entered in the Common Pleas of Chester county on the 26th February, 1828, in favour of Eckstein, against Carson,

for another debt of $2526.94, and by proceedings under it, the premises were levied on and sold by the sheriff, on the 22d June, 1829, to Anthony Kelty, for $1795, and the sheriff's deed acknowledged on the 3d August, 1829. Neither the levy, sheriff's return, deed, nor any of the proceedings of record in the suit, alluded to these mortgages. In Kelty's written subscription to the contract of sheriff's sale, deed and sheriff's return, the consideration stated was $1795. The appellants alleged that this sale was made subject to their mortgages, as well by the understanding and agreement of all parties, as under the conditions of sale. The third condition of sale was, " the premises are sold free and clear of all liens by judgment or execution, and subject to all legal encumbrances by mortgage, will or otherwise, created prior to the lien of the judgment on which the premises are sold." The sheriff proved the conditions, and also that they were generally the same as those under which they usually sold during the time he was in office up to that date and after for some time : but these differed from others in having the word " will" inserted in this condition. He had in his possession certificates of the mortgages above-mentioned. It was his practice to exhibit them, but he did not recollect exhibiting these. He did not read them, but mentioned he *had them if* any one wanted to see them. He thought the property then worth $7000 or $8000. His uniform practice was to read the conditions of sale, and he did not doubt they were read at this sale. Kelty proved he bought subject to the mortgages; that he knew of Mode's and Johnson's mortgages, but did not know who informed him. He bid $1700 or $1800 under that impression. Figures, calculated by some one on a post, showed him afterwards the amount of the mortgages and interest, and the sum he bid, but the interest was more than he expected. He paid interest to Mode on his mortgage for several years.

On the 8th May 1838, Kelty mortgaged the premises to Phelps and Spafford, of Connecticut, to secure the sum of $5200, previously contracted for placing machinery in the mill. This mortgage was subsequently assigned to the Norwich Bank, and again by them to the Bank of Chester county.

To May Term, 1842, Mode sued out an amicable *scire facias* on the mortgage, in the Common Pleas of Chester county, against Eckstein, mortgagor, and Kelty, terre-tenant, by which it was agreed that Kelty purchased the premises expressly subject to the payment of the mortgage debt, as part of the price of the lands, and assumed the payment of the debt and interest, such being the understanding and arrangement between all the parties concerned at the sheriff's sale, and had continued to pay interest, &c., and judgment was confessed for $4726, balance due at that date on the mortgage. To the same term an amicable *scire facias* against Carson's administratrix and Kelty, terretenant, of the same tenor and effect, was entered and judgment confessed for $1031.16.

To the same term, in the case of the Norwich Bank against Kelty, an amicable *scire facias* was entered and judgment confessed for $5526.78. A *levari facias* issued on each of the above judgments, under which the real estate in question was sold and the fund in court raised.

Other liens were entered against Kelty and bound this property, viz: James Newlin's mechanic's lien, on the 19th Dec., 1837, for $109.93; Eli Fredd's judgment, on the 13th March, 1838; Nathan Baker's judgment, Sept. 19th, 1839; Bank of Chester County, judgment, Feb. 17th, 1840; Jos. S. Lovering & Co's. mortgage, Aug. 13th, 1841; Thomas Bond's mortgage, Oct. 8th, 1841; Thomas Strode's judgment, May 6th, 1842; Norwich Bank's judgment (on bond accompanying mortgage) May 9th, 1842; Thos. Strode's judgment, May 9th, 1842. These creditors claimed the proceeds in the court below, contending that the mortgages were extinguished by the sheriff's sale in June 1829. The appellants, to repel this, called a number of witnesses to show, by conversations and declarations of the creditors and by parol proof, that these creditors had notice of the existence of the mortgages at or before the times their debts were contracted and liens obtained, and that the Chester county Bank procured the sheriff's sale in 1829, and received the money as the party interested.

The court below (BELL President) was of opinion that since the cases of *Willard* v. *Norris* (2 *Rawle* 56) and *Corporation* v. *Wallace* (3 *Rawle* 109), it was not to be questioned that by the law of Pennsylvania a judicial sale under a judgment against the owner of land made before the Act of 6th April, 1830, discharged the lien of a prior mortgage for the payment of money and turned the mortgagee round on the fund, which by operation of law was substituted for the land, whatever was the price brought or was done with the proceeds. The mortgagee was bound to look to the fund in the sheriff's hands, and if he failed to do so, could not have recourse to the land. But such purchaser might agree to buy the land subject to the mortgage, and if he did so, equity would hold him to his bargain; and he would take it *cum onere*, according to *Fickes* v. *Ersick* (2 *Rawle* 166); *Shultze* v. *Diehl* (2 P. R. 273); *Stackpole* v. *Glassford* (16 *Serg. & Rawle* 163); *Barnet* v. *Washebaugh* (Ib. 414); *Twelves* v. *Williams* (3 *Whart.* 485): *Roberts* v. *Williams* (5 *Ib.* 170); *Berger* v. *Hiester* (6 *Ib.* 210). According to these cases, one who with a full knowledge of a prior encumbrance proclaimed by the sheriff, agrees by parol to purchase subject to it, makes his bid with an eye to it and purchases accordingly, is bound by his agreement and holds the land subject to the burden. It was not necessary it should appear by the levy, conditions of sale and sheriff's deed; it was sufficient if it appeared by the conditions of sale and by the clear evidence of the purchaser and others, that he bought under the condition that his bids were made with reference to a mortgage for $5000; and

with his final bid of $1795 he, as well as the bystanders, all considered he was to give $6795 for the property, and that he had paid the interest till within two or three years before the last sale of the property. That as to subsequent encumbrancers the question was, whether they had due notice of the existence of the mortgages prior to the origin of their respective claims, and if such notice was given, their liens were subservient. The court then went into the question whether these subsequent mortgagees and judgment creditors had such notice. The conditions of sale were not constructive notice: for one looking into Kelty's title would be led to the sheriff's sale, which, for aught that appeared on record, gave him a title clear of all prior encumbrances: for the conditions of sale are not returned with the record, and make no part of it, and he was not bound to inquire further. These mortgages, therefore, stood as unrecorded mortgages, giving a lien against the land in the hands of the purchaser and against all others with notice. As then there was no constructive notice, the court inquired whether there was evidence of actual notice to the posterior encumbrancers of the fact that Kelty held subject to Mode's and Johnson's mortgages. After examining the testimony of the witnesses, whose depositions had been taken, the court thought there was not notice prior to the origin of their claims, and decreed that the mortgages of Mode and Johnson should not be paid, but the money should be distributed among the subsequent creditors.

*E. K. Price* and *Darlington* for the appellants, supported the general doctrine laid down by the court below, but contended that on the evidence there was notice made out to the subsequent creditors, or some of them, by the testimony of witnesses contained in the depositions as well as by the circumstance of the amount of purchase money in the deed being so far below the value. That the Bank of Chester County was the actor in selling the property in 1829, and received the proceeds of sale. They cited *Bichel* v. *Rank* (5 *Watts* 140); *Trimble's Appeal* (6 *Watts* 133); *Stackpole* v. *Glassford* (16 *Serg. & Rawle* 167); *Barnet* v. *Washebaugh* (*Ib.* 410); *Shultze* v. *Diehl* (2 *P. R.* 273); *Helmbold* v. *Man* (4 *Whart.* 410); *Roberts* v. *Williams* (5 *Ib.* 185); *Berger* v. *Hiester* (6 *Ib.* 215); *Bellas* v. *M'Carty* (10 *Watts* 34); *Garro* v. *Thompson* (7 *Watts* 416); *Cronister* v. *Weise* (8 *Ib.* 218); *Blythe* v. *Richards* (10 *Serg. & Rawle* 265); *Ripple* v. *Ripple* (1 *Rawle* 386); *Mix* v. *Ackla* (7 *Watts* 316); *Knaub* v. *Esseck* (2 *Watts* 282); *Duncan* v. *Reiff* (3 *P. R.* 368); *Carson's Sale* (6 *Watts* 140); *Lowry* v. *Mehaffy* (10 *Watts* 389); *Willing* v. *Brown* (7 *Serg. & Rawle* 467); *M'Pherson* v. *Cunliff* (11 *Serg. & Rawle* 437); *Beale* v. *The Bank* (5 *Watts* 529); *Wilcocks* v. *Waln* (10 *Serg. & Rawle* 380); 2 *Vez.* 485; 1 *Story's Eq.* 189; *Jaques* v. *Weeks* (7 *Watts* 276); *Lewis* v. *Bradford* (10 *Watts* 79); *Frantz* v. *Brown* (1 *P. R.* 257).

*Lewis* and *Dillingham*, after citing *Stewartson* v. *Watts* (8 *Watts* 392); *Jaques* v. *Weeks* (7 *Watts* 270); *Price* v. *Junkin* (4 *Watts* 85); 1 *Story's Eq.* 386; 19 *Vez.* 438; 3 *Vez.* 485; were stopped by the court.

The opinion of the Court was delivered by

SERGEANT, J.—Liens on land, which are to bind it in the hands of purchasers, are *strictissimi juris.* They are cautiously prescribed by law, and the modes of entering and continuing them must be strictly complied with. There is commonly a clash of honest claims, in which some one must suffer, and he to whom the law gives the right, prevails. Notions of equity do not control these conflicts; it is a contest for the right, and each party can insist on what the law awards him, all being innocent and struggling for safety. Hence liens with us are matters of record, which on the one hand the party to be affected must consult, on penalty of loss, and on the other hand, if he does so faithfully, he has acquitted himself of his duty. But what would his condition be, if, on consulting the record, he find the lien satisfied and extinguished, and he is yet to run the hazard of all that may be verbally communicated to him, and is bound to institute an inquiry into every thing mentioned in conversation, and ascertain how far it is well founded, what is the proof of it, what its validity and legal construction, what the amount due, what the circumstances attending an old verbal bargain or understanding between the owner and some former person, that a lien should exist which no law or statute recognizes? No person could buy, or creditor lend his money, if he is to be affected by such claims. It would tend to create a species of liens on land not to be found in any office or record, nor known to our law, depending on parol proof at any future day from the mouths of witnesses.

Here the record showed the mortgages satisfied by the sheriff's sale and sheriff's deed. It was not in the power of the sheriff or purchaser or parties to keep them alive as mortgages so far as to affect a third person, by any memorandum in the conditions of sale, or understanding or bargain among themselves. It is not like the case of an unrecorded mortgage or deed; it is the case of a mortgage extinguished—in fact, no mortgage at all, or at most a parol mortgage. Now certainly it is well settled that two parties cannot by their private agreement create a parol mortgage which shall have the legal effect of a mortgage by reason of verbal notice to creditors or purchasers. This would overthrow the recording Acts and the Acts relative to judgments and other liens. It would be inconsistent with the whole tenor of our decisions, contrary to the settled policy of the Legislature, and productive of infinite peril to landholders and creditors, and of strife and uncertainty to the community. In *Kauffelt* v. *Bower* (7 *Serg. & Rawle* 64), and *Bear* v. *Whisler* (7 *Watts* 144), it is declared that

[Mode's Appeal.]

even a vendor who has executed a deed has no lien for the pur-
chase money as against subsequent judgment creditors with
notice. It was unnecessary, therefore, to inquire into the alleged
notices to the creditors by verbal communications informing them
that Kelty bought subject to these mortgages. If it were made
out, it would avail nothing, as it was not in the power of the par-
ties to revive and keep on foot an expired mortgage, so as to affect
third persons as a lien whether purchasers, mortgagees, or credit-
ors, even admitting that what had occurred before was sufficient,
as to Kelty, to estop him.

Judgment affirmed.