# Campbell & Pharo's Appeal.

# Siner's Appeal.

A mortgage for purchase-money is entitled to priority over a mechanics' lien against the equitable estate of the vendee, under the contract of sale, although dated more than sixty days prior to the time of delivery and recording, and, by agreement, made to a third person, who advanced the purchase-money.

The conveyance of the legal estate to the vendee, and the simultaneous execution of the mortgage to the party who advanced the purchase-money, is not such a merger as will let in the mechanics' claims against the equitable estate of the vendee.

Where mechanics' liens are entered against an equitable estate, their value depends upon that estate, and they survive or perish with it.

APPEALS from the District Court of *Philadelphia.**

These were appeals by Campbell & Pharo, and John H. Siner & Co., from the decree of the court below, distributing the proceeds of a sheriff's sale of the real estate of Mary M. Gibbon.

In the early part of the year 1853, Eli H. Eldridge being then the owner of the lot of ground in question, agreed verbally to sell it to one Robert Q. Gibbon for $650, to be either paid in cash or by Gibbon paying off a mortgage, which covered both this and an adjoining lot belonging to Eldridge; the title to be made when these stipulations were complied with. Gibbon took possession at once, and began the erection of a building, which he planted partly on this lot and partly on an adjoining lot belonging to his mother, Mary M. Gibbon.

In October 1853, a difficulty arose between Eldridge and Gibbon, on account of the latter having failed to pay the purchase-money, which was settled by an agreement that Mrs. Gibbon should take the title to the lot, and give a mortgage for the purchase-money, which mortgage should be sold, and Eldridge paid out of the proceeds. In pursuance of this understanding, a loan was negotiated with Weldon & Tomlinson, but the amount borrowed was made somewhat greater than the actual purchase-money, for the convenience of the vendee. A deed for the messuage and lot was then made to Mrs. Gibbon, which bore date the 2d November 1853, and recited a consideration of $5; and a mortgage was executed by her to Weldon & Tomlinson, bearing the same date, and professing on its face to be for the consideration-money of the premises. This mortgage was recorded on the 6th January 1854. The amount secured thereby was $850.

* This case was decided in January 1857.

[Campbell & Pharo's Appeal.]

At the time the conveyance was made to Mrs. Gibbon, the building was subject to certain mechanics' liens for work and materials done and furnished by the appellants, among others, in and about its erection and construction, under contracts with Gibbon.

Weldon & Tomlinson subsequently sued out the mortgage, and the premises were sold at sheriff's sale, and the proceeds referred to an auditor for distribution. The fund in court proved insufficient for the discharge of all the liens against the premises, being only $405.84, and it became necessary, therefore, to determine the question of priority as between the mortgage and the mechanics' liens. Before the auditor, it was asserted, as matter of fact, on the one hand, that the date of the mortgage was not its true date, but that it had been actually executed within sixty days of its record; and on the other hand, that Campbell & Pharo, shortly before the sale, had examined the record of the mortgage, and, being led by the date to suppose that it had lost its lien as a purchase-money mortgage, had abstained from bidding at the sale an amount necessary to protect themselves on the opposite view. In order to determine these facts, issues were directed, which, coming on to be tried by a jury, a verdict was rendered in the following terms :—

" 1. The jury find that the mortgage was recorded within sixty days after the execution thereof.

" 2. That the said mortgage was executed by Mary M. Gibbon to Weldon & Tomlinson direct, for the purpose and intention of providing the purchase-money for the premises, to be paid to Eli H. Eldridge, the vendor, and that he was a party to said arrangement, and approved the same.

" 3. That one of the plaintiffs, Messrs. Campbell & Pharo, being lien-creditors, did examine the record of the mortgage, and learn therefrom that the said mortgage appeared to have been recorded after more than sixty days elapsed, and thereupon and in consequence was deceived as to the priority of the claim, from the date of the mortgage.

" 4. That the equitable estate of R. Q. Gibbon was transferred to his mother, Mary M. Gibbon, at and about the 1st day of October or 1st of November 1853.".

The matter was thereupon again referred to the auditor, who reported the facts above stated, and in addition, that the amount of the purchase-money, with interest actually due at the time of the mortgage, was $636, but that it was represented to Weldon & Tomlinson as a purchase-money mortgage, and that they had no notice that it was for a larger amount than the price of the lot. The auditor further reported, that Weldon & Tomlinson had no notice of any equitable estate in the lot in Robert Q. Gibbon

[Campbell & Pharo's Appeal.]

or in Mary M. Gibbon, prior to the execution of the deed from Eldridge to the latter, or of any liens having attached thereto, unless such notice might be presumed in law, from the fact that Robert Q. Gibbon had erected a building on the lot; and that it did not appear that either he or his mother had actually used and occupied the building prior to, or at the time of the execution of the mortgage.

On these facts, the auditor awarded the whole fund to the mortgagees, it being insufficient to satisfy their claim in full, on the ground of priority of lien; and further decided, that the issue in relation to Campbell & Pharo having been deceived as to the true date of the mortgage, was an immaterial one, and the verdict thereon to be disregarded.

The case coming to be heard, upon exceptions to the auditor's report, the District Court confirmed the report, and decreed the fund to the mortgagees. The following opinion was delivered by HARE, J.:—

" The fund in dispute, arises from the sale of a house and lot, under a mortgage executed by Mary M. Gibbon, to Weldon & Tomlinson. The claimants on one side are the mortgagees, who have an undisputed legal title, founded on a conveyance made by Eli H. Eldridge to the mortgagor, on the day that the mortgage was executed; and on the other, certain lien-creditors, by whom the house was erected, under contracts made prior to the conveyance, with one R. Q. Gibbon, at a time when the latter had nothing in the land but an equitable interest, arising under oral contract of sale made with Eldridge, from whom both sides deduce their title. The Act of April 28th 1840 expressly restricts the operation of liens, filed for work done or materials furnished for the erection or construction of buildings, to the estate of the person in possession of the land at the time, or at whose instance the same is erected; but the lien-creditors seek to escape from its operation on the ground, that as R. Q. Gibbon transferred his estate to Mary M. Gibbon before she acquired the legal title, it merged in her prior equitable interest, and thus became subject to all encumbrances which were binding on the latter.

" Properly speaking, merger cannot be predicated of the union of a legal and equitable right to the same land, for when the legal and equitable titles unite, the former ordinarily becomes superfluous, and will only survive when and so far as its distinct existence may be necessary to subserve those purposes for which it was originally recognised or created: *Preston on Merger* 327–341. For when such a union occurs, equity yields to and follows the law, unless there are special circumstances of notice, or of payment of value on one side, and want of it on the other, which make it inequitable that the law should prevail: Goodright *v.*

Wells, *Dougl.* 741; 3 *Ves.* 339; Wade *v.* Paget, 1 *Brown Ch.* 363; Phillips *v.* Brydges, 3 *Ves.* 126; *Preston on Merger* 315; James *v.* Morey, 2 *Cowen* 246, 259, 313, 318; Doty *v.* Russell, 5 *Wend.* 129. Thus the equitable estate will not be kept alive in favour of heirs *ex parte materna*, for the purpose of preventing those on the paternal side from taking the land by virtue of their superior right to the legal title: Goodright *v.* Wells; because both are mere volunteers, and one can show no better equity than the other. Hence, in order to postpone the mortgagees who have the legal title, to the lien-creditors, whose claims attached to the equity before both estates united, it must appear that the position of things is such as to require the intervention of chancery, in favour of the one and against the other. Had the land remained in the hands of Mary M. Gibbon, the estate which she derived from her son would have been unquestionably chargeable with liens of which she had full notice, and could not have been freed from them, by the subsequent conveyance made to her by Eldridge: Richter *v.* Selin, 8 *S. & R.* 425. But the execution of the mortgage to Weldon & Tomlinson, introduced a new element into the transaction, by giving birth to the rights, which belong to purchasers for value, and rendering the contest one between the holders of an undisputed legal title, deduced regularly of record, and claimants whose right rises no higher than an unrecorded equity on the other.

" This statement of the question is sufficient to show, that the title of the mortgagees must prevail, unless they had notice of the equity at or before the period at which the mortgage was executed; for nothing is better settled, than that equity, far from disturbing a *bonâ fide* purchaser, will assist him in maintaining those rights against all comers, which he has acquired in good faith, and may consequently retain with a safe conscience. This is emphatically true, in cases like the present, where the estate of the purchaser is fortified by the record, while that of those who assail it, depends wholly on transactions *in pais*, and evidenced by parol; and thus enables him to rely on the wise and salutary enactments, which require that the title to land shall be duly recorded, for the protection of buyers, and to give simplicity and safety to the transfer of real estate. The value of these statutes to the whole community is immense, and no man should be deprived of his share in the benefit, without sufficient proof that he has forfeited his claim to protection, by buying with notice derived from private sources, of that which he could not learn through the more appropriate means of the public offices of the proper county.

"Notice, though sometimes a mixed question of law and fact, is always, when the facts are proved or undisputed, a question of law; and the question whether the mortgagees had notice is set at rest by the report of the auditor, who finds ' that Weldon &

[Campbell & Pharo's Appeal.]

Tomlinson had no notice of any equitable estate in the said lot in Robert Q. Gibbon or in Mary M. Gibbon, prior to the execution of the deed from Eldridge to Mary M. Gibbon, nor of any lien having attached on the same, unless such notice may be presumed in law from the fact of Robert Q. Gibbon's having erected a building on the said lot.' And he goes on to add, that 'it does not appear that either Robert Q. Gibbon or Mary M. Gibbon ever actually used or occupied the lot prior to or at the time of the execution of the mortgage.' As the report of an auditor is conclusive on all matters of fact, unless the circumstances thus found show notice, we are bound to presume that it was not given, and it would seem plain, that no such construction can be put upon them. The only conclusion, which can be fairly deduced from the existence of a newly built house, on land offered for sale, or comprised in a deed or conveyance, is that it *may* be subject to liens, which *may* bind the estate of the vendor : it has no tendency to show that the equitable interest has been severed from the legal, and is outstanding in the hands of other persons. The proper mode of ascertaining whether such liens exist, is the judgment index, under the name of the owner as the record shows him; and if a search duly made there negatives their existence, it need not be prosecuted elsewhere, because there is no mode in which it can be prosecuted effectually. Common sense has long since established that nothing can be effectual as notice which will not, if followed up, end in knowledge. Hence no better criterion can be given, for determining whether the title of a purchaser should be made to yield to antecedent equities, than an inquiry whether he had the means of discovering their existence, and whether the purchase was one which he would have been taught to avoid, by a competent knowledge of the law, and the exercise of due diligence in discovering the facts, in subordination to the usual course of business.

" In the present instance, the best and most careful legal adviser would have limited his inquiries to the title of Eldridge, as set forth of record, down to the conveyance to Mary M. Gibbon, and would have rested content in the belief, that as it was wholly unexceptionable when it came from his hands to hers and was mortgaged by her immediately upon the receipt of the deed from him, the mortgagees might advance their money in safety on the faith of the record. The possession of the property was, so far as appears, consistent with the record, for the building would seem to have been wholly vacant, at the period when the title passed from Eldridge to Mary M. Gibbon, and vested under her mortgage in Weldon & Tomlinson. To make possession notice, its nature and existence must be proved and not left to presumption.

" Had R. Q. Gibbon been actually engaged in erecting the

building when the mortgage was executed, a question might have arisen, whether the mortgagees were not bound to take notice, that he was acting under a contract of sale, and not merely as a builder or contractor; although an equivocal or doubtful possession can never be held to operate as notice, without the risk of doing the most flagrant injustice. But the house was finished and his possession at an end, some time before the conveyance by Eldridge, which is the source of the plaintiff's title, who could only infer from seeing a new building on the premises, and finding no liens outstanding against the holder of the record title, that he had erected the building and paid for it. It may indeed be said, that an inquiry of Mary M. Gibbon or Eldridge, would have revealed the truth; but this necessarily involves the assumption that the truth would have been spoken had such an inquiry been made. Were purchasers bound to quit the safe guidance of the record for the purpose of prosecuting inquiries elsewhere, and presumed to have known that which others might or would have told them, there would be no reason for stopping short of the presumption that they knew everything which was or might have been known to the vendor; which would render the purchase of real estate one of those dangers which wise men would encounter as seldom as possible. In every point of view, therefore, the title of the mortgagees should be held free from equities growing out of antecedent transactions to which they were strangers at the time, and which, so far as we know, were never disclosed to them subsequently, and we consequently dismiss the exceptions to the auditor's report, which are all founded on a different and opposite view of the law.

"I have said nothing hitherto of the case of Foster's Appeal, 3 *Barr* 79, in which a judgment against a prior equitable interest, arising out of a contract of sale, was held not only to bind the legal title on its subsequent acquisition by the vendee, but to follow it into the hands of a subsequent mortgagee, who was not shown to have had notice of the existence of the equity; chiefly, as it would seem, because the mortgage was not recorded within the period fixed by the recording acts. But it is so clear, that a purchaser, who traces the title to land from its source down to the moment when he takes his deed, without finding anything on the records of the county to warn him that there is aught to impede the course of the stream, cannot be deprived of the benefit of his purchase, without proof that he received that information from other quarters which he could not find in the manner provided by law, that we are compelled to presume either that notice was proved or conceded at the trial, and omitted in the report, or, what seems more likely, that the necessity for notice was overlooked by the counsel in the cause, and the question whether it was necessary not raised or argued before the court. It is very

plain, that the judgment itself did not operate as notice, for no man is bound to continue the search for judgments farther back than the record shows the title to have been in the hands of him against whom the search is made, nor could any effect have been due to the possession of the vendor antecedently to the period at which he received his deed, because it is enough that possession be consistent with the title at the time when it is conveyed, and it would be at once dangerous and useless to require an examination into the nature or character of prior possessions.

"The Supreme Court of Pennsylvania has repeatedly held, that the true way to view questions arising between legal and equitable rights or titles, is to suppose a bill filed by those who claim the equity against those who hold by virtue of the law. Had this course been taken in Foster's Appeal, it would have been seen, that although the judgment-creditor had a better right to the legal title than the vendee, and might consequently subject it to an execution, which would have bound both the law and the equity; yet that this right was liable to be defeated by a *bonâ fide* sale or mortgage, without notice of the equity, and that the failure of the purchaser to record his deed or mortgage could not subject him to the lien of the prior judgment, although it might have been fatal had a sale been made to a purchaser without notice under the judgment. It is true, that the lien of a mortgage dates from its record, but this is only true as between encumbrances binding the same right or title; and it cannot be supposed that a failure to record a mortgage of the legal title will postpone it to a prior or subsequent mortgage of an equity, which is undisclosed at the time when the legal title is mortgaged. But if this were not so, still the worst which can result from delay in recording a mortgage under any circumstances, is to shut it out from all prior operation, and make it take effect as if it had been executed and delivered on the day that it is recorded. Hence, a mortgagee can never be prejudiced by his want of diligence in putting the mortgage on record, unless the estate of the mortgagor undergoes some alteration in the interval of such a nature as to render a new mortgage ineffectual. In Foster's Appeal, and in the case now before us, no change occurred of any description, and a conveyance to a purchaser would have passed precisely the same title, when the mortgage was recorded, as when it was originally executed.

"There still remains another view of the question, which I mention, because it had much weight with the court, and would seem to be conclusive, in connexion with the reasons already stated. At all times, and under any possible view of the law, the claim of the lien-creditors was subject to the legal estate of Eldridge, and consequently to his right to the purchase-money, for which it remained in his hands as a security. Had, therefore, all

the facts been known, and the fullest notice given, Eldridge might have mortgaged the title thus held to Weldon & Tomlinson, to the extent of the value for which he held it, nor would such a step on his part have curtailed or in any way prejudiced those claiming the equity.

" And it would seem sufficiently plain, that if this could be done by a direct transfer, it might equally be effected through the medium of a conveyance to Mary M. Gibbon, and an immediate assignment by her to Weldon & Tomlinson, who would thus only acquire what the lien-creditors had no right to have, and what the other parties to the transaction might consequently part with. Such a conveyance and assignment were made in the present instance, and the jury to whom the question was submitted have found that the whole was one transaction.

" It has already been shown, that an equity will disappear in the legal title, unless the intention of the holder or the exigencies of justice interpose and thus keep it separate. Here the require-ments of justice and the meaning of the parties both require, that the holders of the legal title, and those claiming under them, should have that priority, to the extent of the unpaid purchase-money, which its retention at the time of the sale conferred on the vendor, and which creditors claiming under the vendee, and acting solely on the faith of his imperfect estate, have no right to dispute. Hence, as the fund in court falls short of the price of the land, there can be no doubt as to the proper mode of appli-cation. In every point of view, therefore, we think that no equity has been shown of a nature to control the use now made of the legal title, and we consequently award the fund to the mortgagees, to whom it was transferred by the mortgage."

From this decree Campbell & Pharo, and John H. Siner & Co., claimants upon mechanics' liens, respectively appealed.

*Briggs*, for the appellants.—The fund here should have been awarded to the lien-creditors, in preference to the mortgagees. The taking possession of the lot by Gibbon, and his making im-provements thereon, put in him an unquestionable equitable estate : Pugh *v.* Good, 3 *W. & S.* 56 ; Lee *v.* Lee, 9 *Barr* 169 ; Reed *v.* Reed, 2 *Jones* 117 ; Moore *v.* Small, 7 *Harris* 461 ; which was subject to the liens. Thomas *v.* Simpson, 3 *Barr* 69 ; Richter *v.* Selin, 8 *S. & R.* 425 ; 12 *Id.* 12 ; 3 *Binn.* 4. This estate so encumbered was transferred to Mary H. Gibbon, and when the legal and equitable title became vested in her, the liens instantly attached to the legal estate : Lynch *v.* Dearth, 2 *Penn. R.* 101 ; Foster's Appeal, 3 *Barr* 79 ; Lyon *v.* McGuffey, 4 *Barr* 128 ; Watt *v.* Steel, 1 *Barr* 386. The case of Chickering *v.* Lovejoy, 13 *Mass.* 51, relied upon on the other side, does not apply, for no

*interest* was ever in the party who is supposed to occupy there the position of Mrs. Gibbon here. In this case, the conveyance *to* her, by the vendor, and the mortgage *by* her to a stranger, constituted two separate transactions. She had a clear and distinct interest, and the dealing of the mortgagee was with that, as is shown by the fact, that the mortgage was for considerably more than the price of the land. Eldridge might, indeed, have assigned his title to the mortgagees, but that was not done or intended to be done.

This cannot be, as was assumed below, a purchase-money mortgage, for that involves the reservation of an interest in the land conveyed by the vendor. Here Weldon & Tomlinson had no previous title to or interest in the land. Nor was it a continuation of the vendor's lien, for there was no express assignment of that; and such a lien cannot subsist after the execution of the deed. But even if it can be considered as a purchase-money mortgage, it has lost its priority by not having been recorded within sixty days, as required by the Act of 1820: *Brightly's Purd.* 231, § 83. Foster's Appeal, 3 *Barr* 79, is an express decision on this point. It is true, that it is found by the auditor, that the mortgage was recorded in sixty days from its actual *execution;* but as regards strangers, the date of the deed must be taken as conclusive, otherwise the record would tend rather to mislead than enlighten. Here the verdict of the jury establishes that Campbell & Pharo were actually deceived into a change of their position, by this false date. Hence, the mortgagees are equitably estopped from contradicting the record on this point: Commonwealth *v.* Moltz, 10 *Barr* 530; Pickard *v.* Sears, 6 *Ad. & El.* 469; 1 *Greenleaf's Ev.* § 207.

Upon the question of notice: Gibbon was in possession at the time of the execution of the mortgage, and this was notice of the equitable estate. The building was a new one, and that was sufficient to have put the mortgagees upon inquiry as to liens. The appellants were in no default on their part, for they filed their claims within the proper time, and against the proper building and the proper parties.

*Cuyler*, for the appellees.—The appellees have the superior equity. They claim on a mortgage created at the instant the title was conveyed, which represents the unpaid purchase-money. The liens were only on an equitable estate, which was subject to this very purchase-money, and of which the mortgagees had no knowledge or means of knowledge. The building was unoccupied, and the possession therefore consistent with the record title. The Act of 1840, *Brightly's Dig.* 581, expressly provides that a mechanics' lien " shall not extend to any other or greater estate in the ground on which any building may be erected, than that of the person or

[Campbell & Pharo's Appeal.]

persons in possession at the time of commencing the said building.
and at whose instance the same is erected." True, it is held
under this act, that a lien on an equitable estate attaches itself to
the subsequently acquired legal estate, as a judgment does: Lyon
v. McGuffey, 4 *Barr* 126. But here the legal estate was acquired
by a purchaser without notice, who may in conscience retain it,
and thus prevent a merger. The lien-creditors have no peculiar
equity; they furnished their materials on the faith of the equitable
estate only, and that was subject to the payment of this purchase-
money. Why should the court assist them to get that which was
no part of their security? Eldridge could have mortgaged di-
rectly to the appellees, to the extent of the unpaid purchase-
money, and in so doing would have worked no prejudice to the
holder of the equitable estate. What difference can there be, if
he convey, and the grantee mortgages? Lynch v. Dearth is not
in point here, because there the deed and mortgage were not exe-
cuted under the same contract; and Chickering v. Lovejoy, 13
*Mass.* 51, Holbrook v. Finney, 4 *Id.* 569, were there distinguished
on that very ground which they possess in common with the
present. Love v. Jones, 4 *Watts* 465, is a strong authority in
our favour; and this case, as well as Lyon v. McGuffey, show that
where the delivery of the deed and the creation of the encum-
brance are parts of one and the same transaction, the law does not
give priority to charges of earlier date, obtained against the equi-
table estate.

The opinion of the court was delivered by
LEWIS, C. J.—The mechanics and material-men furnished their
work and materials, in this case, entirely on the credit of the
equitable estate then in Robert Q. Gibbon. They had neither an
equitable nor legal right to anything beyond that estate, and they
were as much bound to stand aside in favour of the vendor's claim
for the purchase-money, supported as it was by the legal estate,
as Gibbon himself was.

But it is supposed by their counsel, that there was a door left
open by means of which they might enter upon the legal estate,
after it was conveyed to Mary M. Gibbon, and before she executed
the mortgage for the purchase-money. But, unfortunately for
their enterprise, there was no interval of time between the delivery
of the deed and the mortgage. They were executed at the same
time, and are to be taken as a single transaction. It is true, that
the deed came from Eldridge to Mary M. Gibbon, and the mort-
gage was from Mary M. Gibbon to Weldon & Tomlinson. But
the mortgage was given to provide for the purchase-money, under
an arrangement made by the mortgagor, the vendor and the mort-
gagees. The material circumstance in the case is, that the money
was advanced by Weldon & Tomlinson, on the faith of this arrange-

[Campbell & Pharo's Appeal.]

ment, and under a representation that the mortgage was for the purchase-money. The whole transaction shows that there was no intention whatever to permit Mary M. Gibbon to acquire the legal estate for an instant discharge of the purchase-money, and the acts of the parties show that they carried out their intention.

It is true that the mortgage is not valid against the mechanics' liens, for anything more than the purchase-money; but the proceeds in court will not satisfy even that amount.

Where mechanics' liens are entered against an equitable estate, their value depends upon that estate, and they survive or perish with it. When that estate is founded upon a contract of purchase, every partial payment increases the security of the liens. Even if the money be borrowed for the purpose, the lender gains no priority over the prior liens on the equitable estate, unless he advanced his money upon a contract with the holder of the legal estate, and on the security of that estate. Lynch v. Dearth, 2 Penn. R. 101, was the case of money loaned without any contract with the holder of the legal estate. In that case, the prior liens were preferred to a mortgage given for the money borrowed to pay the vendor. Lyon v. McGuffey, 4 Barr 126, was a case where there was an interval of seventeen days between the conveyance of the legal estate and the entry of judgment for the purchase-money. After such a long interval, it was impossible to say, that the delivery of the deed and the entry of the judgment were one transaction, and it followed, that the liens on the equitable estate gained a priority over the judgment for the purchase-money.

The case now before us differs from both the cases cited. It differs from the last, in the material circumstance, that the delivery of the deed and the execution of the mortgage took place at the same time, and were one transaction. It differs from the first, in the still more important particular, that the money was not advanced on the credit of the equitable estate at all, but distinctly upon the security of a mortgage upon the legal estate, for the purchase-money, under a contract with the vendor himself. The deed was made for the purpose of enabling the vendee to execute this mortgage, and not for the purpose of uniting the legal and equitable estate so as to give a priority to the liens on the latter. Such a union, whether it be called merger or extinguishment, never takes place against the intention of the parties, where that intention is manifested, and where equity requires that the distinction should be presented. The mortgagees are, therefore, entitled to the fund in court.

                                    Decree affirmed.