## Case's Petition

*Schrier & Vallilee*, for petitioner.

*H. K. Mitchell* and *C. A. Bullock*, contra.

FARR, P. J., forty-fourth judicial district, specially presiding, May 28, 1936. — This is a proceeding for a

declaratory judgment under the Declaratory Judgments Act of June 18, 1923, P. L. 840. The questions involved are:

1. Does a sheriff's sale upon a judgment against an equitable estate, immediately attaching to the whole estate upon the acquisition of the legal title by the defendant, divest the lien of a purchase-money mortgage given at the time of acquisition of the legal title?

2. Does the given name "Gust", "Gus", "Augustus", "Augustof" and "Gustof", referring to the same person and appearing in different instruments, as hereinafter indicated in the findings of fact, affect the status of the lien of said mortgage?

3. Does an agreement concerning the lien of a judgment accompanying a judgment note entered against the equitable estate and filed therewith, but not recorded in the judgment docket or noted upon the judgment index, affect the status of the purchase-money mortgage, in view of the following

## Findings of fact

1. On September 22, 1926, May J. Casper, later by marriage May J. Conderman, by contract, sold to Ben Palmer and wife a farm located in Canton Township, Bradford County, containing 130 acres.

2. On July 1, 1927, by contract, Ben Palmer and wife sold to Gust Bergman and Ora, his wife, a portion of said farm described as lying between the State highway on the east and the old road from Canton to Alba on the west, the south line being the north line of L. Ross' land and the north line being parallel thereto and having a hickory tree standing upon said line.

3. Possession of this parcel had already been in the Bergmans since April 1, 1927, under some arrangement culminating in the written contract mentioned in paragraph 2.

4. Frank P. Case & Sons constructed a garage on said lot described in paragraph 2 and took a note therefor

amounting to $600, dated June 1, 1927. Attached to this note was the following agreement:

"And now, to wit: June 1st, 1927, I, Benjamin Palmer, in consideration of the above and the sum of One Dollars to me in hand paid by F. P. Case and Sons, receipt of which is hereby acknowledged, do hereby consent and agree that any judgment entered upon or by virtue of the above note, until paid, shall be, become and remain a lien upon and against the premises above described being the garage building and land upon which said garage stands and upon the land extending the width of said garage to the State Highway and to all intents and purposes as though the full legal title had been conveyed to the said Gus Bergman and Ora Bergman and to the same extent as though the legal title were now in the said Gus Bergman and Ora Bergman with full rights of execution against said property in case of non-payment of the said note or judgment entered thereon.

"Witness my hand and seal the day and year aforesaid.

"(Signed) Ben Palmer (seal)".

5. On December 20, 1929, judgment was entered on this note as of no. 73, February term, 1930, at the suit of F. P. Case & Sons against Gus Bergman and Ora Bergman.

6. Neither of the land contracts was recorded, and the agreement attached to the note was not recorded on the continuance docket, nor was it noted on the judgment index docket.

7. On February 3, 1930, Augustus Bergman and Ora Bergman executed and delivered a mortgage to Rexford R. Soper for $665, in which is described the parcel mentioned in paragraph 2. This was duly recorded on October 6, 1930.

8. On January 25, 1932, Ben Palmer and wife, having received a deed from Conderman for the parcel contracted to Bergman, made, executed and delivered a deed for said lot to Augustof Bergman and Ora M. Bergman. Both deeds were recorded on February 16, 1932.

9. On January 25, 1932, at the time of delivery of said deed, Augustof Bergman and Ora M. Bergman made, executed and delivered to Ben Palmer and wife a mortgage for $200, the balance of the purchase money for said lot, which was immediately assigned to Wallace Allen. The assignment and mortgage were recorded on February 16, 1932.

10. An amicable sci. fa. to revive and continue the lien of the judgment mentioned in paragraph 5 was filed in the prothonotary's office on March 4, 1932, to no. 163, May term, 1932, and noted on the judgment docket.

11. On June 27, 1935, on præcipe of the plaintiff's attorney, a fi. fa. was issued on the above judgment, in pursuance of which a levy was made upon the personal property of said defendants. On June 28, 1935, the writ was returned "Stayed by bankruptcy".

12. On October 7, 1935, an alias fi. fa. was issued upon the judgment, and in pursuance thereof the sheriff levied upon the lot mentioned in paragraph 2, advertised the same and sold it on November 15, 1935, to the plaintiff, F. P. Case & Sons, upon their bid of $451. Distribution was made by the sheriff to the plaintiffs under the Act of June 12, 1931, P. L. 542, by posting a schedule in the prothonotary's office, to which no exceptions were filed.

The principal question in the case is whether this sale divested the lien of the purchase-money mortgage.

It is contended by the plaintiff that the Act of April 27, 1927, P. L. 440, completely abrogated the rule concerning the priority of liens of purchase-money mortgages; that by this act the lien is limited to the date of delivery of the mortgage, and, the Case judgment having attached immediately against the whole estate upon delivery of the deed to Bergman and wife, that the lien of said judgment and the lien of the purchase-money mortgage are equal in date and should have prorated in the fund derived from the sheriff's sale, and, therefore, the lien of the mortgage, not being prior to all other liens, was divested by said sale.

The defendant Allen claims that the rule concerning the priority of the lien of purchase-money mortgages was not changed by the Act of 1927; but the plaintiff replies that if this be true we have a strange anomaly in which the Act of 1927, repealing the Acts of 1820 and 1915, works no change in the law whatever, and therefore is entirely futile.

In Glanvil's time no gage or pledge of lands was good unless possession was also delivered to the creditor, and even Blackstone, in his time, praised the wisdom of that ancient law. Of course this would be impossible under modern conditions. The recording acts were substitutes for this practice, and therefore the status of the liens of mortgages rests upon such acts, taken in conjunction with applicable legal principles.

Early in this Commonwealth the courts announced a rule, called in some of the books a common-law rule, that purchase-money mortgages were prior in lien to all other liens on the property created by the mortgagor, upon the theory that the conveyance to the mortgagor and his execution and delivery of the mortgage for part of the consideration were contemporaneous acts, and that the title never rested in the mortgagor for sufficient time for another lien to become prior to or pro rate with such mortgage. The whole constituted one act, indivisible in fact, and only capable of being split into several by logical subtlety: Commonwealth Title Insurance & Trust Co., trustee, etc., v. Ellis, 192 Pa. 321; Campbell & Pharo's Appeal, 36 Pa. 247, 256.

The Act of April 6, 1830, P. L. 293, provided:

"That from and after the passage of this act, where the lien of a mortgage upon real estate is or shall be prior to all other liens upon the same property, except other mortgages, ground rents, and the purchase money due to the commonwealth, the lien of such mortgage shall not be destroyed, or in any way affected by any sale made by virtue or authority of any writ of venditioni exponas."

This act was amended in 1893, 1901, and by the Act of April 30, 1929, P. L. 874. But these amendments made no change in the law applicable to the present inquiry. Prior to these acts all liens were divested by the sale of real estate upon an execution: Mode's Appeal, 6 W. & S. 280.

The Case judgment became a lien against the equitable estate more than two years before the purchase-money mortgage was executed. And the lien of said judgment immediately attached to the legal estate upon the acquisition of said estate by the defendant in the judgment: Foster's Appeal, 3 Pa. 79.

The rule concerning the priority of purchase-money mortgages, which I shall name the common-law rule, was preserved by the Act of March 28, 1820, P. L. 303, which provided that all mortgages are to have priority according to the date of their recording and that no mortgage shall be a lien until the same shall be recorded. But it contained the following proviso:

"*Provided,* That no mortgage given for the purchase money of the land so mortgaged, shall be affected by the passage of this act, if the same be recorded within sixty days from the execution thereof."

Then came the Act of May 28, 1915, P. L. 631, which amended the Act of 1820 concerning purchase-money mortgages in these words:

"No mortgage given by *purchaser* to *seller*, for any part of the purchase money of the land so mortgaged, shall be affected by the passage of this act, if the same be recorded within thirty days from the *execution* thereof." (Italics ours.)

This would appear to limit the benefit of the common-law rule to cases where the mortgage was given by the purchaser to the seller. This limitation exists by statute in Maryland and Ohio: 23 Am. & Eng. Enc. Law 467. The courts under the former acts construed the rule to include third persons who advanced purchase money

either in consequence of a judgment or of a mortgage: Cohen's Appeal, 10 W. N. C. 544.

The Act of April 27, 1927, P. L. 440, repealed both the Acts of 1820 and 1915. Section 1 of the first act is a re-enactment of the others, until it comes to the part relative to purchase-money mortgages, which is as follows:

"Any mortgage, given by purchaser to seller, for any part of the purchase money of the land so mortgaged, shall have a lien from the time of delivery of said mortgage, provided the same be recorded within thirty days from the date of the mortgage."

It will be observed that the Acts of 1820 and 1915 merely preserved the common-law rule, but the Act of 1927 either makes a new rule or is declaratory of the common-law rule. I believe that the act is only declaratory of the common law. And we observe a purpose in the act in limiting the time of recording to 30 days from its date. A serious controversy arose in the case of Parke v. Neeley, 90 Pa. 52, in which the court permitted oral proof as to the date of the delivery of the mortgage, the date of the mortgage itself indicating that it had not been recorded within the 60 days limited by the Act of 1920 to purchase-money mortgages, now limited to 30 days by the Act of 1927. The date of the lien of a purchase-money mortgage under the common-law rule was the date of delivery, as it is at present under the Act of 1927: Parke v. Neeley, 90 Pa. 52. The Act of 1927 does not pretend to change the rule that there is no time for a lien created by the mortgagor to intervene between the passing of the title from the vendor and receipt of the title from the mortgagor. The title of the act indicates an intention to "protect" rather than destroy this principle. If it had been the intention of the legislature to change the common-law rule it would have done so in positive terms, because it was dealing with a principle that has been approved throughout the history of the Commonwealth and which unmistakably bears the stamp of justice and fairness and precludes the element of fraud. This common-law rule, as

we have seen, applies to judgments as well as mortgages. Can it be said that the legislature intended to strike down this ancient rule as to purchase-money mortgages and leave it standing as to judgments? As was said by Valentine, J., in Dorrance Realty Corp. v. Neary-Turner Realty Co., 17 D. & C. 391:

"It is in the last degree improbable that the legislature would overthrow the fundamental principles, infringe rights, or depart from the general system of the law, without expressing its intention with irresistible clearness."

The doctrine of preference given purchase-money mortgages is well expressed in 23 Am. & Eng. Enc. Law (2d ed.) 470:

"The priority of the purchase-money mortgage to other liens created before the execution of the mortgage rests upon the doctrine that the deed from the vendor and the mortgage by the vendee are parts of one single and entire transaction. Because the seizin of the vendee is thus instantaneous, the title to the land does not for a single moment rest in him, but merely passes through him and vests in the mortgagee without stopping beneficially in the purchaser, and during such instantaneous passage the prior lien cannot attach to the title."

The grantor changed his title from one in fee simple to a title subject to the equity of redemption, and in making the change no lien against the mortgagor could intervene to displace the lien of the mortgage or pro rate with it: Cake's Appeal, 23 Pa. 186. The Act of 1927 did not change the rule, but limited its application by requiring the recording of the mortgage within 30 days from its date, rather than 30 days from its delivery, the former being certain from the inspection of the instrument, the latter being always uncertain.

It will be noted that the Palmer contract was to Gust Bergman and Ora Bergman, his wife; the Case judgment was against Gus Bergman and Ora Bergman; the Soper mortgage was by Augustus Bergman and Ora Bergman,

his wife; the Palmer deed was to Augustof Bergman and Ora M. Bergman, his wife.

Soper filed an answer claiming that the sale did not affect his mortgage owing to the fact it was against "Gus" Bergman, claiming that was a nickname. There is no evidence before the court as to Bergman's true name. However, at the hearing, Soper did not appear or file a brief and the court was advised that he had abandoned his claim, upon the authority of The Ohio-Penna. Joint Stock Land Bank of Cleveland v. Miller, 107 Pa. Superior Ct. 239.

The agreement accompanying the note on which the Case judgment was entered was not noted on the continuance docket or the judgment docket but was filed with the note. In order to give notice to Allen, the assignee of the purchase-money mortgage, it was necessary to have such notations: Ridgway, Budd & Co.'s Appeal, 15 Pa. 177.

Therefore, for the reasons stated, we hold that the lien of the purchase-money mortgage assigned to Allen was not divested by the sale upon the Case judgment, that the land is still bound by such mortgage, that the agreement does not affect the status of said mortgage, and that the lien of the Soper mortgage was divested by the sale.