BOLTON et al. *v.* JOHNS et al.

A retrospective statute, which makes a mere debt a lien on the realty of the debtor, is constitutional, since it touches only the remedy.

Therefore the act of 1845, which declares that the act of 1836 shall be so construed as to embrace mechanics' claims, which *have been* filed, and that they shall not be affected by reason of any contract for the erection of the building, is constitutional, as between the parties and volunteers.

But that act is unconstitutional where it affects to give validity as a lien, to a claim filed, which was no lien by reason of a *contract*, made for the work, &c., when a purchaser for valuable consideration paid, intervened before the enactment of the law; there being no moral obligation on him, even with actual notice of the existence of the claim, which, on its face, was no lien at the time of his purchase.

The *onus* of proving payment of the consideration-money is on the purchaser; the recital thereof in his deed, and the receipt at the foot, is not sufficient proof as against third persons claiming a right.

The discontinuance of an irregular *sci. fa.*, after award, does not affect the right to proceed on a mechanic's lien by a new writ.

In error from the Common Pleas of Montgomery county.

*April* 3, 12, and 13. On the trial of this *scire facias*, the plaintiffs read in evidence the claim filed as a lien, on the 9th of March, 1843, in which it was stated that the plaintiffs, "house carpenters, *contractors* with (defendants) for putting up the basement walls, doing the carpenter work, and plastering the hereinafter described buildings, and for furnishing the lumber for the erection of the same, file this their lien," &c.

The schedule annexed contained a list of twelve items of materials, with the respective dates at which they were delivered, with one gross amount charged for the same, together with the charges made for the work done, in five items. At the foot it was thus stated: "Whole amount of materials and work, $1372 47." "The said buildings having been erected by contract for said sum of $1372 47." A credit was allowed, and the balance divided, for which separate writs issued against the property and terre-tenants.

They then read their sealed contract with defendants, "to erect, build, and finish one house, except painting and plastering, for the

sum hereafter mentioned; also another one against the one mentioned in the space of six months, except painting and brick-work," in consideration whereof defendants agreed to pay $1331 22.

Hudson, as terre-tenant, read in evidence an assignment by defendants to Freedley and another, in trust for creditors, on the 8th of March, 1843, and a .conveyance by them for a consideration named, and receipted for, dated the 18th, and recorded the 20th of September, 1843; but, so far as appeared from the record, did not prove the payment of the consideration—no question appearing to have been made on that point in the court below. The defendants also read the record of a proceeding, by a joint *sci. fa.*, against both houses, under this lien; an award and appeal by defendants, which action was discontinued by the plaintiffs by leave of the court, November 9, 1843. On the 10th the present writ issued.

The court (KRAUSE, P. J.) told the jury that the Supreme Court had settled the law at the time of Hudson's purchase for a valuable consideration, that there was no lien in such a case, the plaintiffs being contractors, as appeared from their own evidence. If they believed these facts, the defendants were entitled to a verdict; the act of 1845 not affecting their rights thus acquired.

*J. Sergeant*, for plaintiff in error.—The supposed decisions do not affect this case, for these are claims for doing *part* of the work, &c. It is impossible to extend the rule, as to contractors, to one who is not a contractor for the whole building, otherwise there could be no lien in any case, since no one can either do work or furnish materials, to however small an extent, unless under a contract, express or implied. The rational construction of the decisions, if they apply at all, is to confine them to contractors simply; that is, persons who furnish nothing but their skill and superintendence. But supposing the decisions do cover the case, they were not made in *this case*, and though doubtless binding on the court below as rules, the parties here had no vested right in the judgment between other parties. It cannot .be pretended they have such a right in the reasoning of the court; for that would bar the power of review if it should be found unsound; and this court has that power beyond question. [GIBSON, C. J.—That may be so, when property has not been acquired on the faith of it; if so, right or wrong, we must abide by it.] Supposing we are driven to the act of 1845, which gives a lien in all cases, notwithstanding a contract exists. Personally we may be opposed to them, but we are on a grave question, the *power* of the legislature to do this. Vested rights,

and retrospective effect, are too vague in themselves to state as objections, and the question is now too well settled by decision. Thus in Barnet *v*. Barnet, 15 Serg. & Rawle, 72, the limit of this power is said to be after judgment in *the* cause. In O'Conner *v*. Warner, 4 Watts & Serg. 223, another limit is suggested. The familiar cases of repairing defects in the form of acknowledgments of deeds by femes covert; in adding the landlord's privilege to one holding under a void Connecticut claim, are cases both retrospective in their operation, and which, by force of the statute, gave a right to one who had none before, and deprived another of a perfect right; Satterlee *v*. Matthewson, 13 Serg. & Rawle, 133, 16 Serg. & Rawle, 169, 2 Pet. 380; Watson *v*. Bailey, 1 Binn. 470; Watson *v*. Mercer, 6 Serg. & Rawle, 49; Mercer *v*. Watson, 1 Watts, 330. These latter cases were after judgment and decision of this court on the perfection of the right.

*Freedley*, contrà.—On the 8th of March, when the assignment was made, there was no lien. On the 9th it was filed, and the action prosecuted to award, after which there was a discontinuance. This put an end to all proceeding *in rem*. It is a mistaken assertion, that the only cases are of contractors for the whole building; Witman *v*. Walker, 9 Watts & Serg. 183, applies the rule of Jones *v*. Shawhan, 4 Watts & Serg. 257, and Hoatz *v*. Patterson, 5 Watts & Serg. 537, to all contractors, though of a part only. As to this statute, the court were right in construing its meaning to exclude all previous purchasers, for every intendment is to be made against an act of injustice and wrong in the legislature; Dash *v*. Van Kleeck, 7 Johns. 477; Lambertson *v*. Hogan, 2 Barr, 22; Norman *v*. Heist, 5 Watts & Serg. 171.

*Meredith*, on the same side.—The facts are not disputed; there was no lien at the purchase. The subsequent statute makes a lien. There is no *decision* which will support this. The cases may be divided into classes. 1. Those statutes giving a new *remedy*, without which power a legislature would be useless. This comprises Stoddart *v*. Smith, 5 Binn. 355; Turnpike *v*. Commonwealth, 2 Watts, 433; Menges *v*. Wertman, 1 Barr, 218, same case as Menges *v*. Oyster, 4 Watts & Serg. 20; which was put on the power to enforce a moral obligation, for had the sale been private there would have been an equitable estoppel. 2. Those prohibiting the exercise of natural rights, which are injurious to the public good; Myers *v*. Irwin, 2 Serg. & Rawle, 368; Resp. *v*. Duquet, 2 Yeates, 493. 3. Those under the right of eminent domain;

McClenachan v. Curwen, 6 Binn. 509; 3 Yeates, 362; Philadel-
phia and Trenton Railroad, 6 Whart. 25; District of Pittsburgh,
2 Watts & Serg. 320; Monongahela v. Coons, 6 Watts & Serg. 101;
Shrunk v. Navigation Co., 14 Serg. & Rawle, 71; Pittsburgh v.
Scott, 1 Barr, 309; Harvey v. Thomas, 10 Watts, 63. 4. Those
enlarging or depriving courts of judicial powers; 3 Binn. 417;
Commonwealth v. Flanagen, 7 Watts & Serg. 68. 5. Those vali-
dating the acts of courts; McDonald v. Schell, 6 Serg. & Rawle,
240; Adle v. Sherwood, 3 Whart. 481; Braddee v. Brownfield,
2 Watts & Serg. 271, where the grant of new trial was attempted.
[GIBSON, C. J.—That was a judicial power.] It was not void on
that account, but because it was against *right*. Evans v. Mont-
gomery, 4 Watts & Serg. 218; O'Conner v. Warner, 4 Watts
& Serg. 223. 5. Those changing the qualities of estates, and re-
gulating distribution; Bambaugh v. Bambaugh, 11 Serg. & Rawle,
191; Deichman's Appeal, 2 Whart. 395. 6. Those in which, as
*parens patriæ*, the legislature act for infants, or persons not *sui
juris*, or persons needing assistance; Norris v. Clymer, and Ser-
geant v. Kuhn, 2 Barr, 277, 393; Estep v. Hutchman, 14 Serg.
& Rawle, 435; Ex parte Crouse, 4 Whart. 9. 7. Those altering
contracts with *consent* of parties; Ehrenzeller v. Union Canal,
1 Rawle, 181; Smith v. Merchand, 7 Serg. & Rawle, 260. 8. Those
validating acts and contracts void by irregularity or informality;
beside those cited on the other side; Tate v. Stooltzfoos, 16 Serg. &
Rawle, 35; but these are confined to matters of mere infor-
mality: to the same effect are Underwood v. Lilly, 10 Serg. &
Rawle, 97; Bleakney v. Farmers, 17 Serg. & Rawle, 64; Hepburn
v. Curts, 7 Watts, 301; Hess v. Werts, 4 Serg. & Rawle, 356. In
Satterlee v. Matthewson, and those other cases cited, there was no
pretence of a contract or vested right, unless in the consequences
of a party's own wrongful acts. So as to the cases on defective
acknowledgments, which, in Green v. Drinker, 7 Watts & Serg. 440,
were restrained from affecting vested rights. That is the distinc-
tion. In the cases where this has been forgotten,—where the legis-
lature have hastily acted contrary to right, the exercise of such
power has always been suppressed; Barter v. Commonwealth,
3 Penna. Rep. 260; 3 Watts, 363; Indiana Turnpike v. Phillips,
2 Penna. Rep. 184; Commonwealth v. Mann, 5 Watts & Serg. 403;
Davis v. Dawes, 4 Watts & Serg. 401; Benner v. Phillips, 9 Watts &
Serg. 15; and the cases cited by my colleague. Under these it is
established that the legislature have no power to take an estate or
charge it, but under the owner's contract, or by reason of some act

of omission or commission. The only question then is, is this within the rule? There is no difficulty upon construing the act; it is not declaratory; to expound a statute cannot be declaratory; if it was in the statute there is no need of the act; if it was not there, it is a *new statute*.

*Reply.*—There is no evidence of this alleged purchase, saving a mere deed; but the payment of the consideration, or want of notice of this claim, is not pretended to have been shown; Rogers v. Hall, 4 Watts, 359, which coincides with the rule in equity; 2 Sug. on Vend. 303, 305. It was made, too, when there was a judgment which was defeated on the mere technical objection to the joint *sci. fa.*

*April* 24. GIBSON, C. J.—So far as regards the parties to the contract to build, the enactment of the statute in question was clearly constitutional. No alteration of their rights was proposed, further than to give a specific remedy against the property, in addition to the remedy which the contractor had against it indirectly, by action; and retrospective laws have always been sustained where they touched not the right, but the remedy. So far there is no dispute. But the scene may be changed by the introduction of a purchaser for value actually paid, at a time when the property was free from the supposed lien; and it is proper to say, that his having had notice of a defective lien would be immaterial. By Simon v. Brown, 3 Yeates, 186, followed in Heister v. Fortner, 2 Binn. 40, it was established that the defective registry of a deed is a nullity; and in the case before us, the lien filed was a nullity which the purchaser was not bound to notice. Even had actual notice of it been given him, he would have been informed of nothing but an abortive attempt to create a lien where none could exist; and if he paid for a title actually unencumbered at the time, a statute to create an incumbrance on it afterwards would be a statute to take so much out of his pocket and give it to another destitute of claim to it, either legal or moral. The case, therefore, stands clear of the principle of Menges v. Wertman, 1 Barr, 223, in which it was admitted that the legislature may add a legal sanction to a moral obligation; for no such obligation rested on the original owner, and certainly none on the purchaser. A mechanics' lien depends on no principle of moral right, but on positive enactment, of which it is the creature; and beyond the terms of which it cannot be extended. If, then, the legislature cannot directly create a lien for the debt of another, where none existed before, it cannot do it indirectly by putting a particular construction on a statute

N 2

which had received a different construction before the period of the purchase.

When this property was sold, the lien filed by the plaintiff, as contractor for the building, was, by the laws of the land, undoubtedly void. Before any legislative interpretation of the act of 1836 had been attempted, as to the point before us, it had been settled in Jones *v.* Shawhan, 4 Watts & Serg. 264, and re-asserted in Hoatz *v.* Patterson, 5 Watts & Serg. 538, that a contractor to build had no lien at all. I mean not to go into a formal defence of those decisions, but if ever human statute disclosed an intention not to be mistaken, that statute disclosed an intention that the contractor whom it ordered to stand as a respondent, should not, in any case, assume the attitude of a demandant. And there was cogent reason why he should not; for, unlike those who dealt with him as a middle-man, he had an opportunity to secure himself by his contract with his employer, and if he omitted to embrace it, the fault was his own. It was the frequency of loss sustained by mechanics and dealers in consequence of the employment of this kind of agent, which first induced the legislature to give them a lien on the building; for if the owner of the ground had continued to be his own master-builder, as he was in the primitive days of the province, those who dealt with him would have had no juster claim to such a lien than the ploughman of another's field would have to a lien on the crop. It was not the merit of the contractor, but the loss he occasioned, that gave rise to the system; and the object of it was not to secure him, but to secure those who had else been put in jeopardy by him. But if to their legitimate liens he had been allowed to add a particular lien of his own, there would have been a scuffle between him and the furnisher of the labour or material for the pay, in which the court would have been employed to determine, not whether the article had been furnished on the credit of the building, but whether the contractor had made it his own by having paid for it; and that would have involved a variety of matters of account, set-off, and dealings between him and his competitor. In prospective cases, under the explanatory act which allows double and conflicting liens to be filed for the same thing, this scuffle will sometimes occur. The person who drafted it, evidently meant to conceal the nature and extent of the construction that had been put on the principal act. The words purport to validate all " claims for labour done, and materials furnished and used in erecting any house or building which may have been, or shall be, erected under, or in pursuance of any contract or agreement *for the same.*" Now,

whether the concluding words be referred to a contract for the building, or a contract for the materials and labour—and they may be indifferently referred to either—it certainly had not been determined that the mechanic or material-man could not file where there was the existence of either of them, or both. No more had been determined than that the master-builder, or contractor for the building, could not file for his services and skill, in exclusion of the mechanic or material-man, for whom alone the statute had provided.

The facility with which general laws for particular cases are obtained, of which the party to be affected has neither notice nor suspicion till the mischief brewing bursts on his head, calls on us imperatively to execute the paramount and immediate legislation of the people in preference to subordinate and inconsistent legislation by their delegates. This facility is inseparable from the most careful and enlightened legislation; for it is impossible for the members of a popular body to perceive the tendency of every section that may be introduced into a bill in the process of its readings. Of one thing we may be sure—that as the legislature never wilfully transcends its legitimate powers, it will be glad to have its inadvertencies corrected.

We might, perhaps, make this case, by a forced construction, an exception to the explanatory act, as not being within its spirit; but as the words evidently embrace all cases of the class, but those expressly excepted, it seems to be more frank, and not less courteous, to meet the question on its constitutional ground. Besides, as the act is undoubtedly constitutional, in a particular view of the facts, the plaintiff has a right to go before a jury on the evidence of them. The judge took for granted, what is the turning point of the cause, that the terre-tenants are purchasers for value actually paid; of which there is no other proof on the paper-book than the usual recital in the body of the deed, and a receipt at the foot of it, which were held, in The Union Canal Company v. Young, 1 Whart. 432, to be incompetent evidence of payment against a third person; and which, it was held in Hamilton v. McGuire, 3 Serg. & Rawle, 355, may be rebutted between the original parties. The cause, therefore, goes back for trial with an intimation that it ought to be left to the jury with a direction to find for the terre-tenants generally, if they shall prove that they have paid the entire purchase-money—not merely secured it—or for the plaintiffs to the amount of the unpaid residue, if their demand shall reach so far; or their whole demand, if nothing has been paid: and that the burden of proof is on the terre-tenants.

Judgment reversed, and *venire facias de novo* awarded.