## Cake's Appeal.

1. A mortgage for the residue of purchase-money of land, executed at the time of the delivery of the conveyance of the legal title and duly recorded, has priority of lien on the land conveyed over judgments against the vendee entered after the purchase of the land and before the conveyance; and therefore a sale under a judgment entered subsequent to the mortgage does not divest its lien.

2. A judgment against the vendee entered several days after the delivery of the conveyance, though confessed for money used in paying a portion of the purchase-money of the land, is not entitled to payment in preference to prior judgments against him entered after the purchase of the premises but before the conveyance of the legal title.

3. The lien of judgments against the vendee entered before the conveyance of the legal title, is extended to the whole estate in the premises on the union of the legal and equitable title effected by the conveyance of the latter.

4. A judgment for the purchase-money of real estate, entered on the same day as the conveyance of the legal title, has priority of lien over judgments against the vendee, entered after a parol agreement by him for the purchase of the premises and before the conveyance.

APPEAL from the decree of the Common Pleas of *Schuylkill county*, directing distribution of proceeds of a sheriff's sale of real estate of Samuel M. Kepner.

By article of agreement, dated 23d Oct. 1850, Jonas Bock sold to Samuel M. Kepner a farm, containing above 287 acres, for a consideration exceeding $8500. A part thereof, viz., $200 was paid on the execution of the agreement, and $3800 was to be paid on 1st April, 1851, when the deed was to be delivered; the residue, exceeding $4500, was to be paid in two equal payments, one on 1st April, 1852, and the other on 1st April, 1854, both to be secured by a mortgage on the land sold.

Soon after the date of the agreement, Kepner made improvements on the land to the extent of several hundred dollars; and on the 17th April, 1851, he took possession. Previous to his taking possession, viz., on 1st April, 1851, a judgment was entered against him in favor of *N. Hertzel* for $207.57.

Afterwards, viz., on 1st *August*, 1851, a deed for the premises from Bock to Kepner, dated 1st day of April, 1851, was delivered to Kepner; and at the same time a mortgage, dated 1st August, 1851, was executed by Kepner in favor of Bock and delivered, to secure the last two instalments of the purchase-money, amounting to about $4500. The mortgage was duly recorded. For the amount of the payment previously due, viz., $3800, Kepner on the day of the delivery of the deed gave to Bock his check. The check was not paid at bank. A few days afterwards, viz., on 6th August, Kepner borrowed $2000 from H. L. Cake, and $2000 from another person, and on the same or next day, Kepner with this money took up his check. For the $2000 loaned by Cake,

[Cake's Appeal.]

Kepner gave him a judgment bond, which was entered on 8th August, 1851. Subsequently, viz., on 14th February, 1852, a judgment was obtained by John Moser against Kepner, and under it the premises purchased by him from Bock were sold at sheriff's sale, on 4th Sept. 1852, to H. L. Cake, for $2150.

It also appeared that Kepner, under a parol agreement with J. Huntzinger and others, took possession in November, 1850, of a lot of ground No. 5, in the town of Ringgold. Kepner built six houses on the lot, which were completed in June, 1851. On 16th Dec. 1851, Kepner received a deed for this lot, *and for an adjoining lot No.* 6. At the time of the delivery of the deed Kepner gave a judgment to the vendors for $479, being the amount of the purchase-money of the two lots, and $50 for *wharfage*, due to them. The lot on which the houses were erected was sold at sheriff's sale for $1780, and lot No. 6 for $140.

Between the time of Kepner's taking possession, under the parol agreement, and the delivery of the deed, several other creditors of Kepner obtained judgments against him, and it was stated by the auditor appointed in the matter, that it was claimed by such judgment-creditors that their judgments being liens on the equitable estate of the defendant in the lots, ought to be postponed only to the claim for *purchase-money* due to the vendors; but that the sum of $50 included in such judgment for *wharfage*, ought not to be paid out of the fund. The auditor reported in favor of the payment of the judgment to Huntzinger and others, the vendors, so far as it was composed of *purchase-money*, out of the proceeds of sale of lot No. 5; and further, that no title to lot No. 6 having been acquired by Kepner until the delivery of the deed to him on the 16th December, 1851, and the judgment of Huntzinger and others having been entered on the same day, it was the first lien upon the legal estate of the defendants in both of the lots, and was entitled to payment of the proceeds of sale of the two lots.

In relation to the proceeds of the sale of the farm, it was contended before the auditor that though the mortgage for the purchase-money was delivered simultaneously with the deed, and duly recorded, it was not the first lien on the land within the terms of the Act of 6th April, 1830, judgments having been acquired against the purchaser after he had acquired the equitable title, and before the delivery of the deed; and that the land was sold *discharged* from the mortgage, which ought to be paid out of the proceeds.

The auditor, however, being of opinion that the mortgage was *the first lien*, and that the purchaser took the land *subject* to the mortgage, directed the proceeds to be applied to the judgments obtained before the legal title was acquired in their order of priority.

It was excepted to the auditor's report that he erred in deciding that the land was sold subject to the mortgage, and in not award-

ing the payment of it out of the proceeds of sale.   2. In deciding that the judgments of Huntzinger and others must be first paid out of proceeds of sale of lots Nos. 5 and 6.   3. In deciding that the judgment in favor of H. L. Cake (which it was previously alleged was for a part of the purchase-money) was not entitled to priority over judgments entered after the agreement for the purchase of the premises and before the conveyance of the legal title.

On 9th April, 1853, the exceptions were overruled and the report of the auditor confirmed.   From this decree Cake appealed, —and exception was taken to the overruling of the exceptions and the confirmation of the report.

*Cumming*, for appellant.—In order that the lien of a mortgage be preserved after a sheriff's sale, it must, by the Act of 1830, be the *first* lien; and it was contended that the judgment against Kepner, whilst he had only the equitable title, attached to the legal title the moment it was conveyed, and had *priority* over the mortgage which was not executed till after the legal estate was conveyed: 2 *Pa. Rep.* 101; 8 *Ser. & R.* 425; 4 *Barr* 128; 1 *Id.* 388.   That, therefore, the mortgage was not the first lien, and was discharged by the sale.

2. It was contended that the judgment of Huntzinger and others was void, on account of other indebtedness than purchase-money, viz., the claim for *wharfage*, being included in it.

It was claimed for *Cake* that the money for which his judgment was obtained having been paid as part of the *purchase-money* was entitled to priority over former judgments entered against Kepner before the conveyance to him.

*Campbell* and *Loeser*, for Bock and Hertzel.—The mortgage was for purchase-money; it was delivered on the same day as the delivery of the deed, viz., on 1st August, 1851, and was duly recorded.   It was therefore the *first* lien, and the property was sold subject to it: 1 *Barr* 386, Watt *v.* Steel.   The Act of 1830 contains a provision in favor of a mortgage for purchase-money if recorded within sixty days.   Also cited 3 *Barr* 79, Foster's Appeal.

As to Cake's judgment—There was no communication between Bock the vendor and Cake.   If Bock himself had taken a judgment for a portion of the purchase-money, and neglected to enter it of record until several days after the delivery of the deed, he would have been postponed to judgments entered against Kepner when the owner merely of the equitable title: 1 *Barr* 386, Watt *v.* Steel.

The opinion of the Court was delivered by

KNOX, J.—This case is free from difficulty.   A mortgage given for the residue of the purchase-money due upon a tract of land

[Cake's Appeal.]

bearing even date with the conveyance of the legal title, and duly recorded, has priority of lien over judgments obtained against the holder of the equitable interest anterior to the conveyance, and therefore a sale upon a judgment entered subsequently to the mortgage does not divest its lien.

So much of Huntzinger's judgment as was for purchase-money was clearly entitled to priority in the distribution of the proceeds arising from the sale of lot No. 5, and the residue was the first lien upon lot No. 6. The auditor was therefore right in paying the whole of this judgment.

The judgment of H. L. Cake *et al.* was last in order of time, and although its consideration was used in paying a portion of the purchase-money, it was not entered until eight days after the delivery of the deed, and the unity of the legal and equitable interest had extended the lien of all prior judgments over the whole estate.

Decree affirmed.