## Parke *versus* Neeley.

1. As to time, the date of a mortgage as it appears on the registry of the mortgage is not to be conclusively taken to be the date or time of its execution, and parol evidence is admissible to show, that in point of fact, it was subsequently executed and delivered.

2. As a general rule, a purchaser is not bound to look beyond a judgment-docket, for liens that should there appear. It is different, however, with the registry of deeds and mortgages. The chief object of recording them is to give actual as well as constructive notice to everybody of title and encumbrances thereon; and apart from notice, the only effect given to recorded instruments by the statute, is to make certified copies thereof evidence; and in case of mortgages, to provide that they shall not be liens, until left for record, except mortgages for purchase-money, which continue to be liens from the date of their execution, if recorded within sixty days thereafter.

3. It is not universally true that a purchaser may content himself with an inspection of the records. There are many facts outside the record, about which he must inquire or suffer the consequences. Whatever puts a party upon inquiry amounts to notice, provided the inquiry becomes a duty; as in the case of purchasers and creditors, where the inquiry, if pursued, would lead to knowledge of the requisite facts.

4. A mortgage, on its face, showed that it was taken to secure purchase-money of the land therein described. It was not recorded until sixty-two days had elapsed from its execution and delivery. It appeared further, that it was not acknowledged until two days before the date of recording. There were other facts relating to the acknowledgment, from which it would be naturally inferred that the acknowledgment was on the same date as the execution and delivery. *Held,* that these circumstances, all of which appeared on the face of the papers, were sufficient to rebut the inference, which would otherwise have arisen from their dates, and were quite sufficient to put the purchaser at a sheriff's sale upon inquiry and visit him with notice. *Held, further,* that there was no error in admitting parol evidence to prove the actual date of delivery.

March 27th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas of *Chester county:* Of January Term 1879, No. 85.

Scire facias sur mortgage issued May 22d 1877, by Robert Neeley against The McLean & Benner Machine Company, mortgagors, and Thomas E. Parke, terre-tenant, the latter being the purchaser at sheriff's sale of the land covered by the mortgage, under a judgment subsequent to it. The terre-tenant alone defended.

The question was whether the mortgage was divested by the sheriff's sale. The records in the offices of the recorder of deeds and the prothonotary showed as follows:

Neeley, on the 11th of May 1875, was the owner of a lot (that covered by the mortgage) in Downingtown, Chester county, which on that day had been conveyed to him by the Downingtown Building and Improvement Company. He afterwards, for the consideration of $3500, conveyed the same lot to The McLean & Benner

[Parke v. Neeley.]

Machine Company. The deed was dated January 1st 1876, and in the conclusion it stated that it was executed "the day and year above written." *Following* the signature is: "Received the day of the date of the above written indenture, the sum of three thousand five hundred dollars, being the consideration within named.

ROBERT NEELEY."

The acknowledgment followed the receipt, and was taken January 11th 1876. The justice who took the acknowledgment was one of the witnesses to the deed: it was recorded February 21st 1876. The McLean Machine Company made the mortgage in suit to Robert Neeley. It is dated January 1st 1876, and is between The McLean Co. and Robert Neeley. It recites that the mortgagors by an obligation bearing even date with the mortgage were bound to Neeley in $7000, conditioned to pay $3500 on the 1st of January 1877, with interest semi-annually (the said sum being for the purchase-money of the hereinafter mentioned premises). The premises mentioned are the same as those conveyed by the deed to The McLean Company, but are recited as being the premises conveyed by the Downingtown Improvement Company to Neeley with the date of their deed, May 11th 1875.

The conclusion was:

"In witness whereof, the said Machine company has caused this mortgage to be executed in its behalf by its president, and its common or corporate seal to be hereto affixed the day and year first above written.          JOHN McLEAN, President." [L. S.]

It was acknowledged by John McLean, President, before Alderman William P. Hibberd (who was a witness to it), February 29th 1876. The mortgage was recorded March 2d 1876. On the 8th of May 1876, and subsequently, a large number of mechanics' liens were entered against the McLean company, on the premises. The claims on which the liens were entered were filed at the time of their entry. They showed that work or materials were furnished from November 18th 1875, through December, January and February following, and afterwards. One of these claims was by James Copeland. His first item was December 15th 1875. This lien was assigned to Neeley. Another was by Robert Neeley himself. His first item was also December 15th 1875. This lien was entered September 25th 1876. On the 25th of October 1876, one Graham recovered a judgment against the McLean company. On a venditioni on this judgment to January Term 1877, the premises were sold by the sheriff to Thomas E. Parke, for $1250. The sheriff's deed to him was acknowledged March 14th 1877. An auditor was appointed to make distribution of the proceeds of the sale. They were all distributed amongst the mechanics' lien creditors, and proved insufficient to pay them in full. Robert Neeley

[Parke *v.* Neeley.]

received a dividend on his own claim, and Copeland's, assigned to him.

On the trial, the plaintiff gave in evidence the mortgage and its record, and rested. The terre-tenant then gave in evidence the above-mentioned matter of record, and by oral testimony the following evidence:

The lot, when sold to Neeley by the Downingtown Improvement Company, had on it a building, erected by them for factory purposes. Shortly before November 19th 1875, there was a meeting of the citizens of Downingtown and vicinity with officers and members of the McLean company—then an incorporated company—to start that company in Downingtown. Neeley was president. Inquiries were made as to who would subscribe for that purpose. Neeley said he would give this building (the property covered by the mortgage). At a conference afterwards of a committee on the subject with a representative of the company, Neeley said he would give the building as his share, and subscribe to paper "real estate," naming the building at $3500; others subscribed. The company immediately commenced work for the erection of an engine-house, in connection with the factory, which they also altered; they erected another building, and also a third, called "the foundry." The work was continued until it was complete. Neeley furnished stone for the foundation of the engine-house, and also for the foundry, commencing December 15th; for this his lien was filed.

There was evidence showing the persons who did work and furnished materials, and the times when the work was done and materials furnished.

In rebuttal, the plaintiff, under objection and exception, gave evidence for the purpose of showing that the mortgage had been executed and delivered on a day different from its date.

McLean, president of the Machine company, the only witness called, testified:

The company purchased from Neeley what was called the factory property. From about December 1st 1875, until the deed was made, the president urged him to make it; he refused to deliver it until the mortgage was made. The deed was received by the president about the 14th or 15th of January, and held by him in escrow till the 17th, when it was placed amongst the company's papers as a delivery. This was simultaneously with the execution of the first mortgage, that is on the 17th of January, the date of the acknowledgment of the first mortgage. Upon consultation, the directors agreed to make such mortgage, and Neeley was notified. The deed was dated January 1st, at Neely's own desire, because, as witness supposed, he wanted the mortgage to draw interest from the 1st of January. He had subscribed for $3500 worth of stock. Neeley made the date of the deed without consulting the president.

[Parke v. Neeley.]

The tenant submitted a number of points, asserting in substance: that as it appeared by the records that the mortgage was not recorded within sixty days from its execution, and as there were liens on the land prior to its date, and to the recording, the purchaser at sheriff's sale took the land divested of the lien of the mortgage, and that its lien attached only from the day it was entered of record; that the purchaser at sheriff's sale was not required to look further than the record, nor was he bound by any matters *in pais* as to the time of the execution of the mortgage; that the mortgagee, by accepting the mortgage and putting it on record, asserted that its contents were true, and is estopped as against the purchaser at sheriff's sale from averring that its date was not the day of its execution; that although the jury might believe the time of delivery was about the 14th of January, yet, if they believed that Neeley directed that it should be dated the 1st of January, he is estopped from averring that it was executed on a different day; that as Neely claimed from the proceeds of the sheriff's sale dividends on the two liens which preceded the entry of the mortgage, he is estopped from saying that these liens were not prior to the mortgage, the proceeds of the sale being a substitute for the legal title; and that the plaintiff was not entitled to recover.

All these points the court refused.

In the general charge, the court, Futhey, P. J., inter alia, said: " We charge you now that if you find that the deed and mortgage—the deed made to Mr. Neeley, and the mortgage received by him for purchase-money—were delivered at the time spoken of by witness McLean, president of the Machine company, on the 17th of January, instead of the 1st day of January, when they bear date, your verdict will be for the plaintiff. I repeat: if these instruments were delivered on the 17th of January, as testified to by McLean, instead of the 1st of January, when they bear date, and when without this testimony it would be presumed they would be delivered, your verdict will be for the plaintiff, and I must say to you there is no contradiction of Mr. McLean, the only witness who speaks to the point, and that he is positive about it that the deed was delivered on that day. I see nothing in the case to create a doubt of the accuracy of his belief, or the justness of his statement."

The verdict was for plaintiff for $4112.50, and after judgment thereon, the defendant took this writ, assigning for error the admission of the testimony of McLean, the refusal of the points, and the portion of the charge above noted.

*William B. Waddell* and *P. F. Smith*, for plaintiff in error.— A purchaser at a sheriff's sale is not required to look any further than the record: Mode's Appeal, 6 W. & S. 280; Coyne *v.*

[Parke *v.* Neeley.]

Souther, 11 P. F. Smith 457; Patterson *v.* Forry, 2 Barr· 456; Randolph's Appeal, 5 Id. 242; Mather *v.* McMichael, 1 Harris 301; Loomis's Appeal, 10 Id. 312. The policy of the law is that judicial sales shall be made clear of all reasonable doubt. There would be few bidders at such sales if all sorts of inquiries as to matters *in pais* were to be made where a doubt is raised as to the accuracy of the record. A purchaser cannot be bound by anything which merely puts him on inquiry as to the facts.

The indulgence given by the Act of 1820 to purchase-money mortgages, is a reason why the mortgagee should be more strictly held to a compliance with its requisitions. One must not put on the record what actually misleads.

The deed in this case took effect from the date of its execution. *Neeley* had that filled in, "January 1," and it was so recorded. Had money been lent on judgment, March 1st, with no notice but the deed, no mortgage having then been recorded, would not that have preceded the mortgage?

A deed is presumed to be delivered the day it bears date: Hall *v.* Benner, 1 P. & W. 407. The acknowledgment on a subsequent date does not affect the presumption: 2 Bl. Comm. 306; Judge Sharswood's note 18; Shep. Touch. 72; 28 Law Lib. 145.

Neeley was estopped as against the purchaser at sheriff's sale by his assertion in the mortgage that it was executed on the 1st of January: Ayres *v.* Wattson, 7 P. F. Smith 360; Chapman *v.* Chapman, 9 Id. 214.

*Alfred P. Reid,* for defendant in error.—A record to which absolute verity is imported, applies only to judicial records which are potentially, if not actually, made up under the eye of the court. This is not true of the records in the recorder's office: Fleming *v.* Parry, 12 Harris 52; Lancaster *v.* Smith, 17 P. F. Smith 427. The date of a deed or a recital in it, may be shown by parol evidence: Kelly *v.* Thompson, 7 Watts 401; Angier *v.* Schieffelin, 22 P. F. Smith 106; Brooke's Appeal, 14 Id. 127; Geiss *v.* Odenheimer, 4 Yeates 278; McGeary's Appeal, 22 P. F. Smith 365; Dungan *v.* American Life Insurance Co., 2 Id. 253. Whatever is sufficient to put a party upon inquiry, which would result in the information sought, is equivalent to notice: Angier *v.* Schieffelin, *supra;* Bancroft *v.* Cousen, 13 Allen (Mass.) 50; Knouff *v.* Thompson, 4 Harris 364; Bellas *v.* Lloyd, 2 Watts 401; Odgen et al. *v.* Porterfield, 10 Casey 191. A purchaser of real estate observing a lien of record, within a reasonable time before his deed, is bound to inquire into the incipiency of his vendor's title. He cannot rely upon the date of the deed alone: Guthrie *v.* Watson, Leg. Int., Dec. 15th 1876; Cake's Appeal, 11 Harris 187.

When the purchaser examined this title at the time of sale, he found the deed dated, acknowledged and recorded at different dates.

[Parke v. Neeley.]

He found a mortgage between the same parties on the same premises stated to be for purchase-money, dated, acknowledged and recorded at different dates. He is presumed to know the law, that a purchase-money mortgage is a first lien, if recorded within sixty days after its execution, and that mechanics' claims upon a prior equitable title, would come in after the purchase-money mortgage, if recorded in due time. He must presume a mortgagee for purchase-money would record his mortgage in time to secure his money.

Would it not be his manifest duty, when the record is conclusive of nothing, but the time of recording, to inquire further as to when the legal title vested in the company? Is there not notice to him in these things that requires him to seek further information on the subject? And the facts he is bound to seek are evidence upon the trial for the same reason.

The date of a deed is only presumptive evidence of the time of delivery: Harris v. Norton, 16 Barbour 264; Elsey v. Metcalf, 1 Denio 323. In Brooke's Appeal, 14 P. F. Smith 129, it was held that the registry could be corrected by parol proof as to the date of the acknowledgment of a mortgage. The doctrine of estoppel has no application in this case: Rhodes v. Childs, 14 P. F. Smith 25; Bigelow on Estoppel 480.

Mr. Justice STERRETT delivered the opinion of the court, May 5th 1879.

The contention of the plaintiff in error is that the mortgage, on which the scire facias in this case issued, was divested by the sheriff's sale, at which he became purchaser of the mortgaged premises.

It is conceded that the mortgage, as expressed on its face, was given to secure purchase-money, and if recorded within sixty days from the execution thereof, was undoubtedly the first lien on the land, and consequently not divested by the sale, unless its date raises a conclusive presumption as to the time of its execution. On the other hand, if not recorded in time, the mechanics' liens, although subsequently entered, were first in order, because they related back to the commencement of the building and attached to the equitable interest which the mortgagor had acquired before the conveyance of the legal title. The deed and mortgage were dated January 1st 1876, and the latter was not recorded until the sixty-second day thereafter. In the absence of proof to the contrary, the presumption would be that they were executed and exchanged on the day they bear date. Assuming this to be so, the mortgage thus having lost its priority, was postponed to the mechanics' liens, and consequently divested by the sheriff's sale under the subsequent judgment. It was clearly shown, however, that the deed and mortgage were both executed after their date and within sixty days of the time the latter was recorded. This being established, it was

[Parke *v.* Neeley.]

held that the mortgage continued to be the first lien, and was not divested by the sheriff's sale. The introduction of parol evidence to prove the actual date of execution, and the legal effect given to it by the court form the sole grounds of exception on the part of the plaintiff in error. He contends that his rights as a purchaser at the judicial sale are to be determined by the proper record of liens and by what appeared on the registry of the mortgage at the time of the sale and not by what was proved *aliunde*, as to the time it was in fact executed; in other words, that as to time, the *date* of the mortgage must be conclusively taken to be the date or time of its execution, and that parol evidence is not admissible to show that in point of fact it was subsequently executed and delivered. The exceptions relied on by the plaintiff in error resolve themselves substantially into two questions of law; the legal effect of what the records of the court, and the registry of the mortgage exhibited at the time of the sheriff's sale, and the question of estoppel. The mechanics' claims filed May 8th 1876, and subsequently, might be resorted to by the purchaser for the purpose of ascertaining when the liens were filed, and how far back they related. This, in connection with information derived *aliunde*, would probably inform him that these liens attached to the equitable interest of the mortgagors before the legal title was acquired. So far as the record of these claims was concerned he might rely implicitly on what was there represented. Like all judicial records, made up, potentially, if not actually, under the eye of the court, the proper averments of record inported verity, and might be taken as his guide in bidding at the sheriff's sale: Hopkins's Appeal, 34 Leg. Int. 250. As a general rule, a purchaser is not bound to look beyond the judgment docket for liens that should there appear: Coyne *v.* Souther, 11 P. F. Smith 457. It is different, however, with the registry of deeds and mortgages. The chief object of recording them is to give actual as well as constructive notice to everybody of title and encumbrances thereon; and, apart from notice, the only effect given to recorded instruments by the statute is to make certified copies thereof evidence, and in case of mortgages, to provide that they shall not be liens until left for record, *except* mortgages for purchase-money, which continue to be liens from the date of their execution, if recorded within sixty days thereafter. In Cake's Appeal, 11 Harris 186, the record of the mortgage did not exhibit it as a first lien. It was for purchase-money, but the conveyance was dated several months before its entry. Judgments had been obtained against the equitable title, and from the face of the record appeared to have closed in upon the legal estate, ahead of the mortgage; and yet upon proof that the deed had been antedated, and the mortgage recorded within sixty days from the time it was actually executed and delivered, it was held that the lien of mortgage was not divested, but that it still bound the land in the hands of

the purchaser.  The question in that case arose on distribution of the proceeds of sale, but that is unimportant, for after refusing to permit the mortgagee to participate in the proceeds and turning him over to the land, it would come with bad grace to say that the purchaser might refuse payment and remit him to the proceeds.  While it is true, as a general rule, according to Megaw v. Garrett, 11 Casey 322, and other cases, that a purchaser need not look beyond the record for liens and encumbrances, it is not universally so.  There are several exceptions, and in some of them the safety of purchasers is not consulted.  Generally the record furnishes no notice of mechanics' liens until they have run for a considerable time.  The existence of a purchase-money mortgage may appear at any time within sixty days after its execution, and it is not necessary even then to disclose on its face the material fact that it is for purchase-money, nor the time when it was executed, without which knowledge the purchaser can form no reliable judgment respecting the liens.  Guthrie v. Watson is a case in which a person, after acquiring an equitable interest in the land, confessed a judgment, and months afterwards accepted a conveyance of the legal title.  The record did not show that the judgment was a lien on the land thus acquired, nor suggest anything pointing towards it.  The land appeared to be subsequently acquired and unencumbered, and yet a purchaser was bound to take notice of the encumbrance and hold subject to it.  So that it is not universally true that a purchaser may content himself with an inspection of the records.  There are many facts outside the record, about which he must inquire or suffer the consequences. There was quite sufficient in this case to put the purchaser on notice. Whatever puts a party on inquiry amounts to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, where the inquiry, if pursued, would lead to knowledge of the requisite facts: Milliken v. Graham, 22 P. F. Smith 490.  The mortgage shows upon its face that it was taken to secure purchase-money of the land therein described, and that the mortgagee intended to preserve his lien, which could only be done by recording the mortgage within sixty days from the time it was executed and delivered.  This, in connection with the fact that only sixty-two days had elapsed between the date and the entry, should have suggested inquiry, as to whether it was not antedated.  It appeared further, that it was not acknowledged until the 29th January, only two days before it was recorded.  While it is true that it might have been delivered before it was acknowledged, such a transaction in regard to a mortgage would be so exceptional and extraordinary as to excite inquiry.  Again, the alderman before whom the acknowledgment was taken was a subscribing witness to the execution and delivery of the mortgage, from which it would naturally be inferred that the acknowledgment was simultaneous with the execution and delivery.  The same may be said in regard to the deed.  Its

acknowledgment is of a later date than the deed itself, and the magistrate, before whom it was taken, is also a subscribing witness to the execution and delivery.   These circumstances, all of which appeared on the face of the paper, were sufficient to repel the inference which would otherwise have arisen from their dates, and were quite sufficient to put the purchaser on inquiry, and thus visit him with notice.   There was no error in admitting parol evidence to prove the actual date of delivery, nor in the controlling effect given to the fact which the testimony clearly established.   And, in addition to this, there was quite enough on the face of the papers themselves to make it the duty of the purchaser to inquire.   If he had done so, he would have been fully informed that the mortgage was the first lien, and would not be divested by the sheriff's sale. There are no facts in the case out of which estoppel could arise.

Judgment affirmed.