## Brumbach v. Pearson et al.

*Snyder, Zieber & Snyder*, for plaintiff.

*Ralph H. Mengel* and *Stevens & Lee*, for defendants.

SCHAEFFER, P. J., Nov. 4, 1929.—To the *scire facias* upon a mortgage caused to be issued by the plaintiff, the New Home Savings and Loan Association has filed an affidavit of defense, claiming to be the present owner of the property described in the mortgage, and contending that plaintiff's mort-

gage has been discharged by the sheriff's sale at which the New Home Savings and Loan Association was the purchaser.

The facts are as follows:

1. April, 1927. Written agreement, never recorded, between Herman Strohecker and Maggie M. and Edwin A. Pearson, husband and wife, for sale of land. Immediately thereafter the Pearsons entered into possession and began building a dwelling house, which was completed before the deed was delivered.

2. July 13, 1927. Judgment entered by New Home Savings and Loan Association against Maggie M. Pearson and Edwin A. Pearson, her husband.

3. Aug. 9, 1927. Deed from Strohecker to Maggie M. Pearson, wife of Edwin A. Pearson, for land described in the agreement of April, 1927. Deed recorded same day.

4. Aug. 9, 1927. Mortgage by Maggie M. Pearson and husband to Aaron Brumbach, the plaintiff here, upon premises that day conveyed by Strohecker. Mortgage recorded same day.

5. Sept. 8, 1928. Sheriff's sale of premises to New Home Savings and Loan Association on its judgment entered July 13, 1927.

6. Sept. 22, 1928. Distribution of proceeds of sheriff's sale to New Home Savings and Loan Association upon its judgment. No claim made by plaintiff for any distribution upon his mortgage.

7. Dec. 5, 1928. Scire facias issued upon præcipe of Brumbach, the plaintiff here.

By the Act of April 6, 1830, P. L. 293, and Act of May 8, 1901, P. L. 141, the mortgage remained undestroyed and unaffected by the sheriff's sale only if the lien of the mortgage was "prior to all other liens upon the same property" except other mortgages, ground rents, purchase money due the Commonwealth and taxes, municipal claims and assessments.

The entry of the judgment by the savings and loan association on July 13, 1927, created a lien against the equitable estate then existing in the Pearsons. The latter had possession of, and had started to improve, the premises under articles of agreement with the owner for the purchase thereof. Their interest, though equitable, was subject to the lien of the judgment subsequently entered and was liable to sale by the sheriff upon that judgment: Auwerter v. Mathiot, 9 S. & R. 397. Upon the conveyance of the legal title to them or to one of them, the lien of the judgment extended to the whole estate, legal as well as equitable: Cake's Appeal, 23 Pa. 186. For a judgment against the equitable estate which a vendee holds under articles of agreement for the sale and purchase of land attaches to and binds the legal estate the instant that it vests in the vendee: Waters's Appeal, 35 Pa. 523.

It follows that the instant that Strohecker delivered his deed to the Pearsons on Aug. 9, 1927, the entire interest of the Pearsons, legal and equitable, in the property became subject to the lien of the judgment of the savings and loan association.

If this were not so, the doctrine of equitable liens would be worthless. In order that equitable liens may be of real value, the law has made an exception in their favor to the ordinary rule that a judgment does not bind after-acquired property. In Guthrie v. Watson, 33 Legal Intell. 444, decided by the Supreme Court in 1876, this principle was sustained and enforced. Chief Justice Agnew said: "Clearly in every case of equitable estate the record of the judgment is notice of the lien to all subsequent purchasers. . . . When a purchaser, therefore, sees a judgment against his vendor within a reasonable time before his deed, he is bound to inquire into the incipiency of his vendor's title; he cannot rely on the date of the deed alone. He is, therefore, put upon

inquiry to ascertain when his vendor's title began." In that case the equitable title arose on Jan. 12th; the judgment binding it on Feb. 28th; and the legal title conveyed on Sept. 11th. The judgment of Feb. 28th was held to be enforceable against the land in the hands of a subsequent purchaser at private sale.

It must be apparent that the lien of the judgment of the savings and loan association, even as against the legal estate of the Pearsons, was prior in point of time to the lien created by the recording of the mortgage. For the lien of the judgment attached the moment the deed was delivered, and the execution, delivery and recording of the mortgage necessarily followed the delivery of the deed. Hence, we must conclude that the lien of plaintiff's mortgage could not be said to be prior to all other liens (other than those excepted by the statute), and it must follow that the mortgage was discharged by the sheriff's sale. For the mortgage, not being a purchase money mortgage given to the vendor, became a lien only upon its entry: Act of April 27, 1927, § 1, P. L. 440.

In Parke v. Neeley, 90 Pa. 52, there arose the question of the divestiture of a mortgage by a sheriff's sale. The mortgage was given to the vendor and was stated to have been given for purchase money; it was dated Jan. 1st, acknowledged Feb. 29th, and recorded March 2nd. By the record, therefore, it did not appear to have been recorded within sixty days of its delivery. Later, mechanics' liens were filed with claims showing work and material furnished before Jan. 1st and before the delivery of the deed to the mortgagor. There followed a sheriff's sale upon a subsequent judgment and distribution of proceeds to the mechanics' lien creditors. The mortgagee issued a writ of scire facias sur mortgage, against which the purchaser at sheriff's sale defended, claiming that the lien of the mortgage had been divested. But it was held that parol evidence was admissible to show that the date appearing upon the mortgage was not in fact the date of its execution, and that having been delivered within sixty days prior to its recording, its lien was prior to the mechanics' liens, and, hence, was not divested. Mr. Justice Sterrett said (page 57): ". . . if [the mortgage were] not recorded in time, the mechanics' liens, although subsequently entered, were first in order, because they related back to the commencement of the building and attached to the equitable interest which the mortgagor had acquired before the conveyance of the legal title. . . . (Page 58): He [the plaintiff in error] contends that his rights as a purchaser at the judicial sale are to be determined by the proper record of liens and by what appeared on the registry of the mortgage at the time of the sale and not by what was proved aliunde, as to the time it was in fact executed. . . . The mechanics' claims filed May 8, 1876, and subsequently, might be resorted to by the purchaser for the purpose of ascertaining when the liens were filed, and how far back they related. This, in connection with information derived aliunde, would probably inform him that these liens attached to the equitable interest of the mortgagors before the legal title was acquired. So far as the record of these claims was concerned, he might rely implicitly on what was there represented. Like all judicial records, made up, potentially if not actually, under the eye of the court, the proper averments of record imported verity, and might be taken as his guide in bidding at the sheriff's sale: Harper's Appeal, 34 Legal Intell. 250. As a general rule, a purchaser is not bound to look beyond the judgment docket for liens that should there appear: Coyne v. Souther, 61 Pa. 457. It is different, however, with the registry of deeds and mortgages. The chief object of recording them is to give actual as well as constructive notice to

everybody of title and encumbrances thereon; and, apart from notice, the only effect given to recorded instruments by the statute is to make certified copies thereof evidence, and, in case of mortgages, to provide that they shall not be liens until left for record, *except* mortgages for purchase money, which continue to be liens from the date of their execution, if recorded within sixty days thereafter. . . . (Page 59) : While it is true, as a general rule, according to Magaw *v.* Garrett, 25 Pa. [319] 322, and other cases, that a purchaser need not look beyond the record for liens and encumbrances, it is not universally so. There are several exceptions, and in some of them the safety of purchasers is not consulted. Generally, the record furnishes no notice of mechanics' liens until they have run for a considerable time. The existence of a purchase money mortgage may appear at any time within sixty days after its execution, and it is not necessary even then to disclose on its face the material fact that it is for purchase money, nor the time when it was executed, without which knowledge the purchaser can form no reliable judgment respecting the liens. . . . There are many facts outside of the record, about which he must inquire or suffer the consequences. There was quite sufficient in this case to put the purchaser on notice. Whatever puts a party on inquiry amounts to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, where the inquiry, if pursued, would lead to knowledge of the requisite fact: Mulliken *v.* Graham, 72 Pa. [484] 490."

This latter principle was applied in First National Bank *v.* Walker, 296 Pa. 192. In that case the court of common pleas had ordered the prothonotary to satisfy a judgment; and the entry was made on the judgment index, "Satisfied November 20, 1925, by decree of court." From that order an appeal was taken Feb. 15, 1926, to the Supreme Court. On Feb. 7, 1927, the defendant in the satisfied judgment conveyed certain land to' Stover, who borrowed certain money from the plaintiff bank, which was secured by a mortgage on the premises. On April 2, 1927, the Supreme Court reversed the lower court's decree satisfying the judgment. Upon proceedings by *scire facias* to revive the judgment, the court said, at page 196: "The question thus arises, what notice was given by this record to persons having occasion to make examination. It is undoubtedly a general rule that a purchaser is not bound to look for judgments beyond the judgment index, and if his search discloses the existence of no liens entered there, he may properly assume that no such lien exists. Likewise, if he finds an entry of satisfaction on the judgment index, he has ordinarily a right to rely upon such entry and assume the lien which formerly existed has been paid or otherwise disposed of. However, if the record discloses any circumstance, in addition to the entry of satisfaction, calculated to put the party on inquiry as to further information to be obtained with respect to the satisfaction of the judgment, it becomes his duty, in the exercise of ordinary diligence, to make inquiry. . . . Such record carries with it 'constructive notice of all facts therein expressly recited as well as of such facts as might be fairly inferred from its recitals, but nothing more:' Johnson *v.* Hess, 126 Ind. 298, 309. In Parke *v.* Neeley, 90 Pa. 52, this court, after stating that, although true as a general rule a purchaser need not look beyond the judgment docket for liens that should there appear, called attention to the fact that exceptions exist to this rule," and that the duty of inquiry, as above stated, sometimes arises. Applying the principles so stated, the court held that the notation "satisfied by decree of court" put on one examining the records the duty of looking further, and as an examination of the appearance docket would have disclosed the pending appeal, that was notice of the possi-

bility of the decree of the lower court being reversed, and, hence, the lien of the mortgage was subsequent to the lien of the judgment.

In our case there is no trouble about the record upon the judgment index. The judgment of the New Home Savings and Loan Association was there and was unsatisfied. But there was no record in the recorder's office or upon the records of the court of any title in the judgment debtors. The agreement of purchase between Strohecker and the Pearsons was not on record. But under the foregoing cases we believe that the record of the judgment put upon all who dealt with the judgment creditors upon the faith of after-acquired real estate the duty of inquiring as to the inception of the title, both legal and equitable, of the judgment debtors.

Here, as in the case of Guthrie v. Watson, *supra*, to hold that a subsequent purchaser was not bound by the judgment entered against the equitable estate would be to render the doctrine of equitable liens worthless.

But in addition to pointing out that there was nothing upon any record which tended to establish any estate in the judgment debtors at the time of the entry of the judgment, the plaintiff contends that the same principles do not apply in a contest between the mortgagee and the purchaser at the sheriff's sale. The plaintiff contends that, although as between himself as mortgagee and the savings and loan association as judgment creditor, the latter, under the decisions, would have been entitled to priority (Cake's Appeal, 23 Pa. 186), yet as between himself as mortgagee and the savings and loan association as purchaser, a different and distinct question arises. In the latter situation, which is the case at bar, the plaintiff insists that the question of the divestiture of the mortgage by the sheriff's sale must be determined solely by what an inspection of the record disclosed at the time of the sale, and that as the record disclosed no estate, legal or equitable, in the Pearsons at the time of the entry of the savings and loan association judgment, it must be ruled as a matter of law that no evidence from outside the record can be received to prove that an equitable estate did in fact exist in the Pearsons and that, as a corollary, it follows that the lien of the mortgage was prior to all other liens and, hence, not affected by the sheriff's sale.

It is true that in some situations a mortgage which is not entitled to preference over a subsequently entered lien, such as a mechanic's lien, which relates back to the beginning of the work upon the ground, is nevertheless not discharged by a sheriff's sale. For the primary rule is that the question of the divestiture of the mortgage must be determined from the record at the time of the sheriff's sale. And that record cannot be supplemented or avoided by parol evidence. Such a case is Reading v. Hopson, 90 Pa. 494, where, on page 497, the distinction between the relative positions of a mortgage and mechanic's liens before and after a sheriff's sale is set forth, and the importance of having a plain and simple rule for the bidder at sheriff's sale to go by is emphasized. It is there decided that a mortgage whose entry was preceded by no liens upon the record remained undischarged by a sheriff's sale upon a subsequent judgment, even though mechanics' liens had been entered after the mortgage with claims for work begun before the date of the mortgage. If the sheriff's sale had been had upon the mortgage and no question of the divestiture of the mortgage had then remained, the mechanic's lien claimants would have been entitled to distribution before the mortgagee; yet as the lien of the mortgage at the time of the sheriff's sale remained prior to all other liens upon the record, the sheriff's sale did not work the divestiture of the mortgage. See, also, Hilliard v. Tustin, 172 Pa. 354. Applying the rule that the divestiture of the mortgage must be controlled by the state of the

record at the time of the sheriff's sale, a mortgage was held to be divested where the record disclosed a subsisting judgment entered the same day as the mortgage, for the mortgage, being upon equality with the judgment, could not be said to be prior to all other liens: Magaw *v.* Garrett, 25 Pa. 319. But the record must appear upon its face to be self-sustaining; a party looking at the record is in fact bound not to notice anything then entered which is upon its face so patently defective as to be null and void, and that is true of defectively entered mechanics' liens (Goepp *v.* Gartiser, 35 Pa. 130), and of a defectively registered deed or mortgage: Bolton *v.* Johns, 5 Pa. 145, 149. If a lien by the record appear to be valid and subsisting, it must be given that effect in determining whether a mortgage be discharged by the sale, and it cannot be shown by parol that such lien had in fact been paid or otherwise discharged by the parties: Coyne *v.* Souther, 61 Pa. 455; Meigs *v.* Bunting, 141 Pa. 233. Eckels *v.* Stuart, 212 Pa. 161, was another case in which a mortgagee, whose mortgage was entered prior to all other liens but was followed by mechanics' liens filed with claims fixing the beginning of the work before the entry of the mortgage, purchased at a sale in partition proceedings, but was denied any part of the proceeds of the sale by reason of the fact that the mortgage was undischarged.

These cases are not in conflict with Parke *v.* Neeley, *supra*, and do not support the contention of the plaintiff here. They decide that the various records of the valid and self-sustaining liens and encumbrances in the prothonotary's office cannot, after a sheriff's sale, be altered, explained away or extended by parol evidence after the rights have been fixed by the sale. But they do not hold that a lien, duly entered, cannot be shown by parol evidence to extend to property as to which the ownership of the lien debtor does not appear upon the record.

In the case at bar the records of the liens are not in question. Neither party seeks to alter or to supplement the record of any lien by parol testimony. The record of the New Home Savings and Loan Association was valid and subsisting at the time of the sheriff's sale and gave to the association a lien upon whatever interest in real estate the judgment debtors then had. But there was no instrument upon record in the recorder's office or elsewhere which told of the existence of any estate, legal or equitable, in the land in question in the Pearsons. Nevertheless, upon the authority of Parke *v.* Neeley, *supra*, we believe that, even after the sheriff's sale, parol evidence is admissible to prove the existence of the equitable estate of the Pearsons at the time of the entry of the judgment. Such proof will not contradict any record. The fact of recording the agreement was not essential to the creation of the lien of the judgment, for the entry of a judgment gave to the judgment creditor a lien upon each and every estate in land which the judgment debtors then had. That lien was not dependent upon any record of the debtor's title; a judgment against one who has taken land under the intestate laws creates a lien even though there be no record of the ancestor's death or of the identity of the heirs. In fact, where one conveys lands to another by deed which remains unrecorded, a judgment obtained against the grantor after the delivery of the deed is ineffectual to give to the judgment creditor a lien upon the land conveyed, notwithstanding the record, for the reason that the debtor is no longer the owner of the property: Cover *v.* Black, 1 Pa. 493; Beman Thomas Co. *v.* White, 269 Pa. 261. It is the fact of ownership in the judgment debtor that is determinative and not the existence or non-existence of a record of the ownership. And the judgment creditor here in entering its judgment had done all that was within its power; it did not have possession

768

of the articles of agreement and had no interest or right to require them to be recorded. The plaintiff in taking his mortgage was bound to know that the mortgagor was already in possession of the premises and had built a house thereon. Similarly, the plaintiff had constructive notice by the record of the existence of the savings and loan association judgment and was bound thereby to inquire as to the origin of the Pearsons' interest in the land. Such inquiry would have disclosed the equitable title of the Pearsons at the time of the judgment, from the fact of possession coupled with the fact of improvement as well as from the existence of the agreement of purchase for the very land conveyed and mortgaged. Also, the property was sold at sheriff's sale upon execution issued upon the savings and loan association's judgment; that fact was notice at that time to the plaintiff that his mortgage was not prior to all other liens.

Clearly, plaintiff's mortgage was discharged by the sheriff's sale, and the questions of law must be decided against the plaintiff.

We do not believe that this result is affected by the fact that the legal title was taken in the name of Maggie M. Pearson, one of the equitable owners, instead of in the name of herself and her husband. For although the articles named both as purchasers, and the conveyance was to one alone, the latter obtained the complete legal title thereby, which became completely bound by the savings and loan association judgment the moment that the deed was delivered.

· And now, to wit, Nov. 4, 1929, the plaintiff's rule for judgment for want of a sufficient affidavit of defense is discharged.

From Charles K. Derr, Reading, Pa.